Carolyn S. MILLER,
Appellant (Plaintiff),

v.

William H. TODD,[1] U.S. Suzuki Motor Corp. and Suzuki Motor Co., Ltd.,
Appellees (Defendants).

No. 49A02–8701–CV–18.

Court of Appeals of Indiana,
Second District.

Feb. 10, 1988.

Rehearing Denied April 12, 1988.

---

1. Appellee-defendant William H. Todd (Todd) was granted summary judgment on a different basis. Miller does not appeal the judgment in favor of Todd.

 

John F. Townsend, Jr., Townsend, Hovde & Montross, Indianapolis, for appellant.

Arthur A. May, Robert J. Palmer, May Oberfell & Lorber, South Bend, for appellees U.S. Suzuki Motor Corp. and Suzuki Motor Co., Ltd.

BUCHANAN, Judge.

## CASE SUMMARY

Appellant-plaintiff Carolyn S. Miller (Miller) appeals the trial court's grant of summary judgment for appellees-defendants U.S. Suzuki Motor Corp. and Suzuki Motor Co., Ltd. [hereinafter collectively referred to as Suzuki], claiming that the trial court erred in determining there were no genuine issues of material fact and that Suzuki was entitled to judgment as a matter of law because the absence of crash bars on a motorcycle is an open and obvious danger.

We affirm.

## FACTS

The facts most favorable to the non-moving party indicate that on August 21, 1982, Miller was injured in a motorcycle accident. The motorcycle was manufactured by Suzuki and owned and operated by William H. Todd (Todd). Miller was riding with Todd when he approached a curve in the road. Instead of attempting to follow the curve of the highway, Todd elected to drive the motorcycle onto a gravel road. The motorcycle slid on the gravel and went down on its right side.

Todd had purchased front wheel crash bars from a local Suzuki dealer and had installed them on the vehicle himself. Crash bars are tubular steel bars which bolt to the motorcycle frame. Todd installed the crash bars on the front of the motorcycle for safety-enhancement purposes. When the motorcycle turned over on its right side, Todd's right leg was protected to some extent by the crash bar. The rear of the motorcycle did not have a crash bar and the motorcycle fell completely on its side in the rear. Miller's tibial plateau of her right leg was crushed.

## ISSUE

Miller raises one issue, as restated, for our review:

Whether the trial court erred in determining that there were no genuine issues of material fact and that Suzuki was entitled to judgment as a matter of law because the absence of crash bars was an open and obvious danger?

## DECISION

PARTIES' CONTENTIONS—Miller contends that the open and obvious danger rule should not relieve a motorcycle manufacturer from the duty to design a crashworthy vehicle.

Suzuki responds that the absence of crash bars on a motorcycle is open and obvious, therefore the crashworthiness doctrine is not applicable because it applies only when a danger is hidden.

CONCLUSION—The trial court did not err in determining that there were no genuine issues of material fact and Suzuki was entitled to judgment as a matter of law.

The crashworthiness doctrine recognizes that the intended use of a vehicle encompasses the inevitability of collisions and requires the manufacturer to design a vehicle reasonably safe for those foreseeable risks. *Huff v. White Motor Corp.* (7th Cir.1977), 565 F.2d 104. While *Huff* reasoned that Indiana law would likely adopt the crashworthiness doctrine, following the trend of the majority of jurisdictions, there is no Indiana caselaw or statutory authori-

ty recognizing the doctrine. However, our resolution of this appeal does not depend upon whether Indiana adheres to the crashworthiness doctrine. The crashworthiness doctrine is merely a variation of the strict liability theory, extending a manufacturer's liability to situations in which the defect did not cause the accident or initial impact, but rather increased the severity of the injury. *Barris v. Bob's Drag Chutes & Safety Equip., Inc.* (3d Cir.1982), 685 F.2d 94.

■ The critical inquiry is whether the manufacturer has provided a product in a defective condition unreasonably dangerous to the user. Ind.Code 33–1–1.5–3 (Supp.1987); *see also Hinkle v. Niehaus Lumber Co.* (1987), Ind.App., 510 N.E.2d 198; *Thiele v. Faygo Beverage, Inc.* (1986), Ind.App., 489 N.E.2d 562, *trans. denied.* Recently, Indiana courts have affirmed the viability of the open and obvious danger rule in Indiana. *E.g., Hubbard Mfg. Co. v. Greeson* (1987), Ind., 515 N.E.2d 1071; *Kroger Co. Sav-on Store v. Presnell* (1987), Ind.App., 515 N.E.2d 538; *Angola State Bank v. Butler Mfg. Co.* (1985), Ind. App., 475 N.E.2d 717, *trans. denied.* A product is not unreasonably dangerous if the danger is open and obvious. *Bemis Co. v. Rubush* (1981), Ind., 427 N.E.2d 1058, *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61. The plaintiff must establish a *latent defect* before the focus narrows on whether the hidden danger created an unreasonable risk of harm. Only then do we consider the extent of a manufacturer's duty to design and produce a crashworthy vehicle. *Accord Larsen v. General Motors Corp.* (8th Cir.1968), 391 F.2d 495. The court in *Larsen,* the pioneer of the crashworthiness doctrine, explained: "[a]ccepting ... the principle that a manufacturer's duty of design and construction extends to producing a product that is reasonably fit for its intended use and free of hidden defects that could render it unsafe for such use, the issue narrows on the proper interpretation of 'intended use'." *Id.* at 501. Nor did the court in *Delvaux v. Ford Motor Co.* (7th Cir.1985), 764 F.2d 469 need to consider whether the crashworthiness doctrine imposed a duty on the manufacturer to install a roll bar "[s]ince the most obvi-

ous feature of a convertible is its lack of a roof, [and] dangers which the ordinary consumer would associate with that feature will not support a strict product liability cause of action...." *Id.* at 474.

As in many areas of the law, the various states may reach different results. In *Camacho v. Honda Motor Co.* (1987), Colo., 741 P.2d 1240, the majority of the court determined that the question posed under the crashworthiness doctrine is not whether the absence of crash bars on a motorcycle is obviously unsafe, but rather whether the degree of inherent danger could or should have been significantly reduced. Colorado's approach is contrary to our decision because Colorado rejects the application of the open and obvious danger rule to *all* product liability claims, regardless of whether or not the claim arises under the crashworthy doctrine. *See Union Supply Co. v. Pust* (1978), 196 Colo. 162, 583 P.2d 276. Whereas, Indiana considers the open and obvious danger rule viable law. *Hubbard, supra; Angola, supra.*

■ As a matter of law, the absence of crash bars on a motorcycle is an obvious danger to the ordinary user. *Accord Hunt v. Harley–Davidson Motor Co.* (1978), 147 Ga.App. 44, 248 S.E.2d 15. "A motorcycle by its nature subjects the rider to a greater risk of injury than other forms of transportation." *Id.* at 46, 248 S.E.2d at 17.

People are not likely to believe that because a motorcycle is operated cautiously that harm can be avoided. A driver or rider of an unprotected vehicle like a motorcycle should reasonably be expected to be aware of harm that may arise from the hazards of the road over which there is no control, e.g. the unexpected pothole, the reckless driver, loose gravel, the unseen bump. The absence of a crash bar obviously affords no protection to the legs of an unenclosed rider.

Although there may be conflicting inferences whether Miller knew that she would be injured because of the lack of crash bars, the test we apply is an objective one. *Angola, supra; Ragsdale v. K-Mart Corp.* (1984), Ind.App., 468 N.E.2d 524. As we

 

have indicated, the test focuses on what the user *should* have known. *Ragsdale, supra.*

Affirmed.

SHIELDS, P.J., and CONOVER, J. concur.