Hugh L. MASTERMAN, Jean Masterman, Plaintiffs–Appellants,

v.

VELDMAN'S EQUIPMENT, INC. and Veldman's Lawn & Garden, Defendants–Appellees.

VELDMAN'S EQUIPMENT, INC. and Veldman's Lawn & Garden, Third–Party Plaintiffs, Appellees,

v.

FISHER ENGINEERING, INC., Third–Party Defendant, Appellee.

No. 71A03–8707–CV–192.

Court of Appeals of Indiana, Third District.

Nov. 21, 1988.

Catherine M. Rohrs, Matthews–Rohrs & Associates, South Bend, for plaintiffs-appellants.

Robert J. Palmer, John J. Lorber, May, Oberfell & Lorber, South Bend, for defendants-appellees.

GARRARD, Presiding Judge.

Mastermans commenced this action to recover for personal injuries they sustained in an automobile collision which occurred on Grape Road in St. Joseph County on April 9, 1982. Grape Road is five lanes wide where the collision occurred. Two lanes are northbound, two are southbound and the center lane is available for motorists traveling in either direction who wish to make a left turn.

The undisputed facts disclose that a northbound pickup truck driven by James D. Reynolds collided with a northbound auto driven by Tennie Lee Bowman. The pickup then veered left across the southbound lanes and collided with Masterman's car which was southbound in the outside southbound lane. At the time of the collision there was attached to the front of the pickup a snowplow mount which had been manufactured by Fisher Engineering, Inc. and which had been sold to Reynolds and installed by Veldman's Equipment, Inc. and Veldman's Lawn & Garden.

Mastermans brought suit against Reynolds, the other driver, and against Veldman's, the seller, alleging negligence and

strict liability. The seller filed a third party complaint against the manufacturer for indemnity, and on plaintiffs' motion the action against the driver, Reynolds, was dismissed. Subsequently, the seller and the manufacturer sought summary judgment. Their motions were granted and this appeal followed.

The claims against the seller and manufacturer are based upon negligence and strict liability in tort. In essence they contend that the snowplow mount affixed to the front of the pickup truck which struck their car was a dangerous instrumentality and that its presence on the pickup truck caused them to suffer more serious injuries than would have occurred had the mount not been there or had a safer mount been there instead. They concede that the mount in no way contributed to causing the collision to have occurred.

The complaint filed by Mastermans alleged negligence, strict liability and breach of implied warranty. In addition, and although the parties have ignored any distinction for their purposes, we note that prior to the 1983 amendments [1] the Indiana product liability statute, IC 33–1–1.5–1 et seq., provided:

> Sec. 1. This chapter shall govern all products liability actions, including those in which the theory of liability is negligence or strict liability in tort; provided however, that this chapter does not apply to actions arising from or based upon any alleged breach of warranty.

As a preliminary matter we will briefly consider the various theories of liability for the sake of clarity.

■ The assertion of breach of implied warranty sounding in tort does not state a basis for liability distinct from what we may refer to as the strict liability now imposed by statute and formerly imposed through Indiana's adoption of § 402A of the Restatement of Torts (Second).[2] *Corbin v. Coleco Industries, Inc.* (7th Cir. 1984), 748 F.2d 411; *Thiele v. Faygo Beverage, Inc.* (1986), Ind.App., 489 N.E.2d 562.

■ Secondly, we hold that the version of the statute applicable to Mastermans' claim does not recognize a distinction between theories of strict liability and negligence where the basis for liability asserted is that a product was sold, leased or otherwise put into the stream of commerce in a defective condition unreasonably dangerous to the user or consumer, etc. (*Compare Baker v. Midland–Ross Corp.* (1987), Ind.App., 508 N.E.2d 32 recognizing a distinct claim for post-delivery negligence.) This is simply to say that under the original version of the act, proof of liability as therein defined may include a provable act of negligence or not. It does not matter.

■ The first portion of Mastermans' argument addresses whether Indiana does, or should, recognize an action for "enhanced injuries." Such an action is defined as one brought against a party whose activity (product) caused the plaintiff's injuries to be exacerbated although that activity was not a contributing cause of the occurrence from which all the injuries arose, i.e. the collision. The term, along with "second collision" (referring to the collision of the injured party with the inside of the vehicle in which he is riding) and "crashworthiness" have occasionally been used to surmount the requirement in a common law action that causation must relate to the occurrence which produces the injuries, especially in states that have not adopted a theory of strict liability akin to § 402A. *See, e.g., Seese v. Volkswagenwerk A.G.* (3rd Cir.1981), 648 F.2d 833.[3]

In *Miller v. Todd* (1988), Ind.App., 518 N.E.2d 1124 the court noted that in Indiana the doctrine is merely a variation of strict

---

1. The present version merely states, "Except as provided in section 5 of this chapter, this chapter governs all actions in which the theory of liability is strict liability in tort."

2. There is no contention that Mastermans intended to assert a claim under the Uniform Commercial Code.

3. Indiana continues to impose the requirement in actions for common law negligence. *See Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154; *Palace Bar v. Fearnot* (1978), 269 Ind. 405, 381 N.E.2d 858.

liability theory. 518 N.E.2d 1126. We agree with this assessment, at least concerning claims within the ambit of the product liability statute. The liability provision, IC 33–1–1.5–3,[4] in force in 1982 stated:

The common law of this state with respect to strict liability in tort is codified and restated as follows:

(a) One who sells any product in a defective condition unreasonably dangerous to any user or consumer or to his property is subject to liability for physical harm thereby caused to the user or consumer or to his property if that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition, and, if:

(1) the seller is engaged in the business of selling such a product, and

(2) the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(b) The rule stated in Subsection (a) applies although

(1) the seller has exercised all possible care in the preparation and sale of this product, and

(2) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

We first note the legislative declaration that it was codifying and restating the common law of the state. Under such circumstances the legislature is presumed to know the common law and to have intended to carry it into the statute except where it expressly indicates otherwise. *Miles v. State* (1920), 189 Ind. 691, 129 N.E. 10;

*Chicago & E.R. Co. v. Luddington* (1910), 175 Ind. 35, 93 N.E. 273. *See also Berlin v. Nathan* (1978), 64 Ill.App.3d 940, 21 Ill. Dec. 682, 381 N.E.2d 1367; 26 I.L.E. *Statutes* § 128, p. 339; 2A *Sutherland's Statutory Construction* (Sands 4th Ed.) § 50.01, 50.02. The rule is a corollary to the rule that statutes in derogation of the common law are to be strictly construed.

Prior to enactment of the statute Indiana had expressly adopted the statement of liability contained in § 402A, Restatement of Torts, Second, which also provided liability "for physical harm thereby caused to the ultimate user or consumer, or to his property." *Ayr–Way Stores, Inc. v. Chitwood* (1973), 261 Ind. 86, 300 N.E.2d 335.

Considering both the common law and the plain language of the statute, the statement of liability simply "for harm caused" imposes no requirement like that of negligence law that the defective/dangerous condition of the product must be a cause of some occurrence, or collision, without which no injuries would have occurred. We, therefore, conclude that Mastermans may state a claim under IC 33–1–1.5–3 for their injuries specifically and additionally caused by the product even though that product did not contribute to causing the collision to occur. *Accord Miller v. Todd, supra.*

We turn then to the specifics of their claim and whether summary judgment was appropriately entered against them.

Concerning summary judgment, it is sufficient to note that it is inappropriate if the materials before the court show the existence of a genuine issue of fact for trial that may be outcome determinative, or if the moving party fails to otherwise establish

---

4. The current version is substantially the same.

Sec. 3. (a) One who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to his property is subject to liability for physical harm caused by that product to the user or consumer or to his property if that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition, and if:

(1) the seller is engaged in the business of selling such a product; and

(2) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which it is sold by the person sought to be held liable under this chapter.

(b) The rule stated in subsection (a) applies although:

(1) the seller has exercised all reasonable care in the preparation, packaging, labeling, instructing for use, and sale of his product; and

(2) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

that it is entitled to judgment as a matter of law. However, the party opposing the motion must come forward with probative evidence to controvert a showing by the movant that no genuine issue exists. *Wingett v. Teledyne Industries, Inc.* (1985), Ind., 479 N.E.2d 51.

Did the Mastermans properly qualify as plaintiffs in an action invoking IC 33–1–1.5–3? (*See Thiele, supra,* holding in part that employees of a wholesale distributor are not.) The question is occasioned by the fact that the 1983 amendments to the act added to the definition of "user or consumer" set out in IC 33–1–1.5–2 the phrase, "or any bystander injured by the product during its reasonably expected use." Since the legislature is ordinarily presumed to intend to change the law when it amends a statute, it is arguable that the amendment is evidence that bystanders were not protected under the original version of the act applicable to Mastermans.

That argument fails in this case. At times a legislative amendment that adds language to a section merely declares expressly what was always intended and was merely implied in a prior version. *H.W.K. v. M.A.G.* (1981), Ind.App., 426 N.E.2d 129; *Bowman v. State* (1979), Ind.App., 398 N.E.2d 1306.

As we have already determined, the product liability statute expressly declared that it was intended to codify Indiana common law and the legislative intent was to carry that law into the statute. The Indiana common law had recognized that a seller, etc. of an unreasonably dangerous defective product would be liable to reasonably foreseeable bystanders in *Ayr–Way, supra,* and the rule was expressly stated in *Chrysler Corp. v. Alumbaugh* (1976), 168 Ind.App. 363, 342 N.E.2d 908, *reh. denied* 168 Ind.App. 363, 349 N.E.2d 654; and *Gilbert v. Stone City Const. Co.* (1976), 171 Ind.App. 418, 357 N.E.2d 738, *reh. denied,* prior to adoption of the statute. We have no difficulty, therefore, in concluding that

reasonably foreseeable bystanders were entitled to protection under the statute prior to the 1983 amendments.

The next element is whether the product was in a defective condition and unreasonably dangerous. Both the statute and § 402A employ these terms as conjunctive and the comments to the restatement make clear that they involve separate considerations; that either one may be found to exist although the other does not.

The critical issue for us is whether the snowplow mount was in a defective condition. Mastermans argue that it was because it was foreseeable that a truck carrying the mount might become involved in a collision with other vehicles lawfully using the highway, and because of the expert testimony produced by deposition[5] which stated an opinion that the mount was unreasonably dangerous and that it could have been more safely designed. Veldman's response asserts the danger was open and obvious within the meaning of *Bemis Co. Inc. v. Rubush* (1981), Ind., 427 N.E.2d 1058.

We believe both arguments largely miss the point. *Bemis* states a defense against an injured user of the product. It has no application to a bystander for in no legal sense can he be said to have used the product or voluntarily incurred the risk.

The foreseeability argued by Mastermans addresses their status as bystanders entitled to sue under the statute. (It would also be germane to a claim for common law negligence, but such a claim is precluded because the mount did not contribute to causing the collision. *Havert v. Caldwell; Palace Bar v. Fearnot, supra,* n. 3.)

Masterman's expert was a professor of mechanical engineering. He did testify that in his opinion the mount might have been more safely designed by making the triangular piece at the top (headgear) so that it could be folded up or down when not in use, by installing some sort of bumper in front of the mount to shield its sharp

---

5. No issue has been presented challenging the ability of the expert to state his opinion and we do not consider the question.

edges, or by making it convenient to remove the mount as well as the blade when it was not in use. While this testimony was far from definitive, we think it was sufficient to raise an issue of defective design condition for purposes of forestalling the summary judgment.[6]

■ We note, however, that both comment (g) to § 402A and IC 33-1-1.5-2.5(a), as added by the 1983 amendments, provide that one aspect of defective condition is that the product be in a condition not contemplated by the ultimate consumer, or as stated in the statute, "by reasonable persons among those considered expected users or consumers." This element speaks to the latent as opposed to obvious character of defects for which liability is intended. When applied to an actual user of the product it closely relates to the defenses of open and obvious danger and whether the user acted unreasonably in proceeding to use the product. *See* IC 33-1-1.5-4(b)(1).

It is more difficult to visualize application of the requirement that the condition be uncontemplated when we are dealing with liability to bystanders because by definition they have no control over the use of the product. (It should be remembered that the drafters of § 402A attached a caveat to the provision disclaiming any opinion as to whether the rule might not apply to harm to persons other than users or consumers, i.e. bystanders, handlers, etc.)

We are hesitant to say, however, that the requirement simply has no application where bystanders are concerned. We can give reasonable meaning to the requirement in the following fashion. We can readily assume that the using or consuming public neither intends nor desires to cause undue injury to the foreseeable bystanders to its activities. If, then, a product is placed in the hands of a user in a defective condition that presents an unreasonable danger to foreseeable bystanders, and the unreasonableness of the danger is not contemplated by the user, we may properly say the requirement has been met.

Thus, in the case before us, it might be determined that the product was defective because of design deficiencies, and those deficiencies made its obvious danger [7] an unreasonable one because they could have been obviated by a safe design. Then, if the user of the mount was unaware that the product was unreasonably dangerous because other safer designs were available, that would meet the requirement that the product was in a defective condition not contemplated by the user.

From what we have said it follows that a genuine issue existed whether the snowplow mount was in a defective condition not contemplated by the user that was unreasonably dangerous.

■ One question remains. The seller and manufacturer assert that if Mastermans can state a claim for enhanced injuries the burden is on them to establish specifically the additional or increased severity of the injuries attributable to the snowplow mount. Mastermans respond that they should only have to establish that the snowplow mount did enhance their injuries. They contend the burden should then shift to the defendants to establish the specific injuries caused by the mount and that unless defendants do so, they should be liable for all the injuries.

We agree with the defendants for two reasons. First of all, the plain language of the statute and of our common law rule of strict liability provide that one who sells any product in a "defective condition unreasonably dangerous . . ." is subject to liability "for physical harm *thereby caused.*" Thus, the statutory statement of liability, while permitting an action for enhanced injuries, plainly appears to limit liability to those injuries. Since a plaintiff must carry the burden of proving the necessary elements of his claim, it falls upon plaintiff in an enhanced injury claim to prove by a preponderance of the evidence the specific injuries caused by the defective product.

---

**6.** Neither the parties nor the state of the record present for consideration the state of the art defense established in IC 33-1-1.5-4(b)(4).

**7.** As Professor Brach testified, no expert was necessary to state that the mount as constructed when protruding in front of a vehicle would likely cause damage if that vehicle had a head on collision.

Secondly, this is the rule applied in many jurisdictions and in our view the better reasoned one since it equates liability to respond in damages to the fault of the manufacturer or seller of the product. Furthermore, where the claim is that the product was defective because a safer design was available, it also appears incumbent upon the plaintiff to offer proof of what injuries, if any, would have resulted had the plaintiff's alternative design been employed. *Huddell v. Levin* (3rd Cir. 1976), 537 F.2d 726; *Yetter v. Rajeski* (D.C. N.J.1973), 364 F.Supp. 105. On the burden of proof, *see also Curtis v. General Motors Corp.* (10th Cir.1981), 649 F.2d 808; *Caiazzo v. Volkswagenwerk A.G.* (2nd Cir. 1981), 647 F.2d 241; *Stonehocker v. General Motors Corp.* (4th Cir.1978), 587 F.2d 151; *Robins v. Yamaha Motor Corp.* (M.D.Pa.1983), 98 F.R.D. 36; *Jeng v. Witters* (M.D.Pa.1978), 452 F.Supp. 1349; *Day v. Volkswagenwerk A.G.* (E.D.Pa.1977), 451 F.Supp. 4.

Veldman's and Fisher assert that the summary judgment should be sustained because Mastermans failed to present evidence for the hearing on summary judgment to establish the injuries/harm attributable to the presence of the snow plow mount.

We agree that they did not. Yet we must also recognize that this is the first decision in Indiana permitting an action for enhanced injuries. Under the circumstances we find it would be manifestly unfair to defeat plaintiff's right to their day in court by a retroactive application of the rule just announced concerning their necessary proof of damages.

Accordingly, we reverse the summary judgments and remand to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

HOFFMAN and STATON, JJ., concur.