Carolyn S. MILLER, Appellant (Plaintiff Below),

v.

William H. TODD, U.S. Suzuki Motor Corp. and Suzuki Motor Co., Ltd., Appellees (Defendant Below).

No. 49S02–9003–CV–226.

Supreme Court of Indiana.

March 27, 1990.

John F. Townsend, Jr., Townsend, Hovde & Montross, Indianapolis, for appellant.

Robert J. Palmer, Arthur A. May, May, Oberfell & Lorber, South Bend, for appellees.

## ON CIVIL PETITION TO TRANSFER

SHEPARD, Chief Justice.

The question is whether a manufacturer may be liable for the enhancement of injuries sustained while using a product even though the cause of the accident was not the product itself. We hold that an action can lie for such damages.

Carolyn Miller was injured in a motorcycle accident in August 1982. She was a passenger on a Suzuki motorcycle owned and operated by William Todd. The motorcycle skidded on gravel and went out of control. Miller's right leg was crushed between the motorcycle and the ground; Todd's leg was protected by the crash bars he had installed on the front of his motorcycle.

Miller's amended complaint for damages against U.S. Suzuki Motor Corporation and Suzuki Motor Company, Ltd. ("Suzuki") claimed that the motorcycle was defective and unreasonably dangerous because it did not have rear passenger crash bars. Miller sought recovery under theories of negligence and strict liability.

The defect about which Miller complained did not cause the accident, but it allegedly enhanced the injuries she received as a result of the accident.[1] She proposed liability for such injuries under the doctrine of crashworthiness.[2] Under the doctrine of crashworthiness a motor vehicle manufacturer may be liable in negligence or strict liability for injuries sustained in a motor vehicle accident where a manufacturing or design defect, though not the cause of the accident, caused or enhanced the injuries. *Camacho v. Honda Motor Co.*, 741 P.2d 1240, 1242–43 (Colo.

---

1. Such injuries are known as enhanced injuries. In motor vehicle cases, enhanced injuries are usually caused by what is referred to as the "second collision." The first collision is caused when the vehicle hits another object. The second collision is the impact of the vehicle on the passenger. One automobile manufacturer has described the second collision this way:

   What happens to the passengers inside the car? "A body in motion will continue in a straight line until something stops it." The passengers continue to move at the braking speed of 30 mph at impact until they are stopped by the instrument panel, the header bar or the steering wheel, or possibly the pavement via an open door. *This is the so-called second accident which actually produces the injuries.*

   Ford Motor Company, *What Happened to the Apple?* 8 (1955) *quoted in* Katz, *Liability of Automobile Manufacturers for Unsafe Design of Passenger Cars*, 69 Harv.L.Rev. 863, 868 (1956). The enhanced injury doctrine has been applied to automobiles, motorcycles, airplanes, snowmobiles, front-end loaders, pleasure boats and riding lawnmowers and tractors. *Tafoya v. Sears Roebuck and Co.*, 884 F.2d 1330, 1338 (10th Cir.1989).

2. The U.S. code chapter on Motor Vehicle Information defines crashworthiness as "the protection that a passenger motor vehicle affords its passengers against personal injury or death as a result of a motor vehicle accident." 15 U.S.C.A. § 1901(14) (West 1982).

1987), *cert. dismissed*, 485 U.S. 901, 108 S.Ct. 1067, 99 L.Ed.2d 229 (1988); *see also Nicolodi v. Harley–Davidson Motor Co.* 370 So.2d 68, 70 (Fla.Dist.Ct.App.1979).

Suzuki moved for summary judgment, arguing that the dangers of riding a motorcycle without crash bars are open and obvious. The trial court granted Suzuki's motion, finding that there were no genuine issues of material fact and the defendants were entitled to judgment as a matter of law.

The Court of Appeals affirmed the trial court's grant of summary judgment based on the understanding that the plaintiff must prove a latent defect before the court will consider the manufacturer's duty to design and produce a crashworthy vehicle. *Miller v. Todd* (1988), Ind.App., 518 N.E.2d 1124. The Court of Appeals concluded that the absence of crash bars is such an obvious danger that as a matter of law all motorcycle users should know the danger involved in riding a motorcycle that does not have crash bars. *Id.* (citing *Bemis Co., Inc. v. Rubush* (1981), Ind., 427 N.E.2d 1058).

The sole issue in Miller's petition to transfer is whether the open and obvious danger rule applies to relieve the manufacturer of a motorcycle of the duty to design and make a crashworthy vehicle by installing rear passenger crash bars. Suzuki attempts to define the issues as whether the dangers involved in riding a motorcycle without rear passenger crash bars are open and obvious to a passenger on a motorcycle and whether the crashworthiness doctrine applies to defeat the affirmative defense of open and obvious danger.

Both parties argue their positions concerning the open and obvious doctrine as applied to a claim of enhanced injuries. We grant transfer to determine whether an injured party can recover for enhanced injuries under either negligence or strict liability.

### I. *Doctrine of Crashworthiness*

■ The plaintiff in a crashworthiness case has the burden of proving that the manufacturer breached its duty in a manner that proximately caused the plaintiff's injuries. The first case to hold that a manufacturer has a duty use reasonable care to design a vehicle to avoid subjecting the user to an unreasonable risk of injury in the event of a collision did so in recognition of the manufacturer's ability to foresee the statistical inevitability of collisions. *Larsen v. General Motors Corp.*, 391 F.2d 495, 502 (8th Cir.1968) (impact of a collision caused the steering mechanism of a Corvair to thrust into driver's head). Accepting this inevitability, the Eighth Circuit declared that the intended use of an automobile includes surviving collisions. *Id.* at 501–02. This doctrine has been accepted in the majority of jurisdictions. *Jackson v. Warrum* (1989), Ind.App., 535 N.E.2d 1207, 1215.

The *Larsen* court discussed the policy behind its conclusion, stating:

> The manufacturer's duty to use reasonable care in the design and manufacture of a product to minimize injuries to its users and not to subject its users to an unreasonable risk of injury in the event of a collision or impact should be recognized by the courts.... Legal acceptance or imposition of this duty would go far in protecting the user from unreasonable risks. The normal risk of driving must be accepted by the user but there is no need to further penalize the user by subjecting him to unreasonable risk of injury due to negligence in design.

391 F.2d at 504–05.

The *Larsen* court did not require a manufacturer to construct an accident-proof vehicle; rather, it held that general negligence principles apply to impose liability when unreasonable risk of injury is created by the manufacturer's design. 391 F.2d at 502. *Larsen* suggests that whether or not the design creates unreasonable danger can be determined using general negligence principles "which involve a balancing of the likelihood of harm, and the gravity of harm if it happens against the burden of the precautions which would be effective to avoid the harm." 391 F.2d at 502, n. 3 (citing Noel, *Manufacturer's Negligence of Design or Directions for Use of a Product*, 71 Yale L.J. 816, 818 (1962)).

The *Larsen* opinion also offers guidance in determining liability in this type of case:

> Any design defect not causing the accident would not subject the manufacturer to liability for the entire damage, but the manufacturer should be liable for that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design.

391 F.2d at 503.[3]

In 1977 the Seventh Circuit concluded that Indiana law would recognize that one who is injured as a result of a mechanical defect in a motor vehicle should be protected under the doctrine of strict liability even though the defect was not the cause of the collision which precipitated the injury. *Huff v. White Motor Corp.*, 565 F.2d 104 (7th Cir.1977). Because this Court had not addressed the issue of whether a manufacturer can be held liable for enhanced injuries, the Seventh Circuit took guidance from our adoption of § 402A of the Restatement (Second) of Torts, and from their survey of the law of other jurisdictions which indicated that the majority of states had adopted the rule put forth in *Larsen*. *Huff*, 565 F.2d at 106–07.

The viability of an enhanced injury claim was addressed more recently in *Masterman v. Veldman's Equipment, Inc.* (1988), Ind.App., 530 N.E.2d 312. The First District Court of Appeals determined in *Masterman* that common law and statutes referring to liability "for harm caused" do not require the defective condition of the product to be the cause of the accident which produced the injuries. Accordingly, the court concluded the Mastermans could pursue a claim under Ind.Code § 33–1–1.5–3 for injuries caused by a product even though the product did not cause the collision. 530 N.E.2d at 315.

This duty to design a crashworthy vehicle has been extended to motorcycle manufacturers. *Nicolodi v. Harley–Davidson Motor Co.*, 370 So.2d 68. The court in *Nicolodi* advanced two significant reasons for doing so. First, it is just as foreseeable that a motorcycle will be involved in an accident as it is foreseeable that an automobile will be involved in an accident. Second, for transportation purposes, a motorcycle is as much a motor vehicle as an automobile and the scope of reasonably foreseeable use is the same. *Id.* at 71. *Contra Hunt v. Harley–Davidson Motor Co.*, 147 Ga.App. 44, 248 S.E.2d 15 (1978) (motorcycle by its nature subjects rider to greater risk of injury than other forms of transportation).

We now recognize the theory of crashworthiness presented in *Larsen* as the basis for a viable cause of action. In effect, the doctrine of crashworthiness merely expands the proximate cause requirement to include enhanced injuries. Because it is foreseeable that a motorcycle will be involved in collisions, for purposes of products liability law an accident is included in the concept of expected use of a motorcycle as well.

We next turn to the question of the propriety of the trial court's summary judgment on Miller's claims based on strict liability and negligence. On appeal, we review a grant of summary judgment under the same standard used by a trial court. Summary judgment may be granted only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Even if there is no core factual issue in dispute, summary judgment is nevertheless inappropriate if one may draw conflicting inferences from the undisputed facts. The moving party must show the absence of any genuine issue of material fact, and all doubts and inferences are resolved against

---

**3.** A number of jurisdictions have followed this method of determining liability. *See, e.g., Huddell v. Levin*, 537 F.2d 726 (3rd Cir.1976); *Caiazzo v. Volkswagenwerk A.G.*, 647 F.2d 241 (2nd Cir.1981). *But see, Fox v. Ford*, 575 F.2d 774 (10th Cir.1978) (death is not a divisible injury in which apportionment is either appropriate or possible); *Mitchell v. Volkswagenwerk A.G.*, 669 F.2d 1199 (8th Cir.1982) (criticizing *Huddell* for requiring the parties and the jury to try a hypothetical case). Since this case comes to us on a summary judgment argued on open and obvious grounds, it would be premature for us to choose between these standards.

the moving party. *Rozek v. American Family Mutual Ins. Co.* (1987), Ind.App., 512 N.E.2d 232, 234.

## II. *Strict Liability Claim*

The Indiana open and obvious danger rule does not apply to strict liability claims under the Indiana Product Liability Act. *Koske v. Townsend Engineering Co.* (1990), Ind., 551 N.E.2d 437. Since the 1978 Product Liability Act was in effect at the time of Miller's collision, her central burden is to prove that the motorcycle was in a "defective condition unreasonably dangerous." The General Assembly's enactment of strict liability did not explicitly incorporate the open and obvious concept or require that a defect be latent. Nonetheless, the relative obviousness of a defect is certainly pertinent to determining whether or not a product is defective and whether or not a defect is unreasonably dangerous.

■ "Defectiveness" from a crashworthiness standpoint is not merely the conclusion that a product failed and caused injury, but that the product failed to provide the consumer with reasonable protection under the circumstances surrounding a particular accident. A claimant should be able to demonstrate that a feasible, safer, more practicable product design would have afforded better protection. Note, *Litigating Enhanced Injury Cases: Complex Issues, Empty Precedents, and Unpredictable Results*, 54 U.Cin.L.Rev. 1257, 1273 (1986).

It is apparent that the parties to this case prepared for and litigated the motion for summary judgment largely on the basis of case law written before the legislature's codification of strict liability. Because the parties necessarily presented the issue in this way, it would be unfair for us to enter a final judgment on appeal either affirming or reversing the trial court's action. The parties should have the opportunity to litigate Suzuki's motion under the standards enacted by the legislature, explaining how factors such as the obviousness of the product's condition, and others, may reflect on whether Suzuki is entitled to summary judgment.

Accordingly, we direct the trial court to vacate its order with respect to the strict liability claim and rehear the motion, affording the parties appropriate opportunity to amend their pleadings and supplement the record.

## III. *The Negligence Claim*

With respect to Miller's negligence claim, the trial court's grant of Suzuki's motion stands on different ground. Five years ago, this Court decided that the doctrine of open and obvious danger could be used on summary judgment against a product liability claim based on common law negligence. *Bridgewater v. Economy Engineering Co.* (1985), Ind., 486 N.E.2d 484. While the legislature's 1978 enactment applied to all product liability claims, "including those in which the theory of liability is negligence or strict liability," the statute did not purport to codify or alter in any substantial way the existing case law governing products claims based on negligence. The 1983 amendment removing the reference to negligence actions in Ind.Code § 33–1–1.5–1 was presumably a recognition of this facet of the 1978 legislature.

■ Because the strict liability legislation left the case law on negligence largely intact, the trial court properly reviewed Suzuki's motion for summary judgment on the basis of the principles contained in *Bemis* and *Bridgewater*. We conclude that summary judgment was appropriate under those principles. Miller chose to ride the back seat of a motorcycle the front seat of which was equipped with the very crash bars she now alleges should have been on the back seat as well. This difference in the protection against danger was sufficiently apparent to justify the trial court's entry of summary judgment on open and obvious grounds.

## *Conclusion*

We affirm the trial court's grant of summary judgment to Suzuki on the negligence claim. We direct the trial court to vacate its judgment concerning the strict liability claim and rehear it as indicated.

SHEPARD, C.J., and DeBRULER, and DICKSON, JJ., concur, except that DICKSON, J., dissents as to Part III.

GIVAN, J., dissenting.

PIVARNIK, J., not participating.

DICKSON, Justice, concurring and dissenting.

While concurring with the majority opinion as to Issues I and II, I respectfully dissent with respect to Issue III.

This is an appeal from the grant of summary judgment applying the open and obvious danger rule. As the proponent of the motion, Suzuki had the burden of showing the absence of a genuine issue of material fact relevant thereto.

Whether a danger is open and obvious depends upon "how broadly one construes the word 'danger' in the 'open and obvious *danger* rule.'" (emphasis in original) *Hoffman v. E.W. Bliss Co.* (1983), Ind., 448 N.E.2d 277, 285. In *Corbin v. Coleco Industries, Inc.* (7th Cir.1984), 748 F.2d 411, 417–18, Judge Eschbach correctly observed:

Whether a danger is open and obvious depends not just on

what people can see with their eyes but also on what they know and believe about what they see. In particular, if people generally believe that there is a danger associated with the use of a product, but that there is a safe way to use it, any danger there may be in using the product in the way generally believed to be safe is not open and obvious.

*See also Kroger Co. Sav-on Store v. Presnell* (1987), Ind.App., 515 N.E.2d 538, 544. The rule cannot be invoked upon the mere openness of a danger. The additional element of obviousness is an additional prerequisite. Openness implies unobstructed visibility. Obviousness connotes being subject to easy perception, cognition, and appreciation.

Whether the absence of the passenger leg crash bars would constitute an open and obvious danger to anticipated motorcycle passengers requires an evaluation of the ordinary knowledge common to the community of such anticipated users. To prevail on its motion for summary judgment on this issue, Suzuki must show that there is no issue of material fact regarding the openness and the obviousness of the danger created by the lack of rear passenger leg crash bars. In its briefs to this Court and the Court of Appeals, Suzuki states that there are only three relevant facts with respect to the issues raised in the motion for summary judgment: 1) that Todd was the owner of the motorcycle; 2) Todd installed the front crash bars; and 3) Miller had ridden this motorcycle on twelve previous occasions.

Suzuki does not direct us to any evidence to obviate the factual issue of obviousness. It fails to show that it was reasonable for the manufacturer and seller to assume that the foreseeable passengers on its motorcycle would include *only* persons familiar with motorcycle riding dangers, especially those risks against which leg crash bars are intended to protect. Common sense and experience would suggest otherwise. There is simply no showing that, considering the ordinary knowledge common to the community of anticipated passenger-users, the absence of rear crash bars would necessarily be observed and perceived let alone be recognized as an obvious danger.

Furthermore, the Court of Appeals has held that a motorcycle rider is not required to expect that the cycle may be involved in an injury-producing accident. *Hogston v. Schroyer* (1983), Ind.App., 449 N.E.2d 291. If not required to expect an accident, a motorcycle rider should not be held to anticipate injuries which would likely result from the absence of leg crash bars in the event of such unexpected accident.

Because of the presence of issues of material fact regarding the openness and obviousness of the danger, summary judgement was erroneously entered. Of course, if Miller proceeds to trial on her product negligence claim, the evidence at trial may well call for application of the open and obvious danger rule.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion in this case to the extent that the

majority directs the trial court to vacate its judgment concerning the strict liability claim and rehear it as indicated in the opinion.

Although our legislature has enacted a statute which speaks of "strict liability," there in fact is no such thing as strict liability in products liability cases, nor does the statute in actuality attempt to create such "strict liability." The statute, Ind. Code § 33-1-1.5-3, reads in part as follows:

> "One who sells, leases, or otherwise puts into the stream of commerce any product in a *defective* condition unreasonably dangerous to any user or customer...." (Emphasis added.)

If we were dealing with strict liability, the manufacturer would be held liable for placing his product in the stream of commerce absent any type of negligence. This the legislature has not done and to do so would place an unconscionable burden upon the manufacturers of various products. What our legislature and many of the cases in products liability are actually discussing is the doctrine of *res ipsa loquitur*.

In each case, a plaintiff is required to prove that the product is in some way defective. The manner in which it became so defective under the exclusive control of the manufacturer falls under the doctrine of *res ipsa loquitur*. I do not perceive that the case of *Bemis Co., Inc. v. Rubush* (1981), Ind., 427 N.E.2d 1058, was in any respect modified or changed by the passage of the above statute.

In the case at bar, the fact that the motorcycle did not have crash bars on the rear was certainly a condition which was open and obvious. Even though one might argue that the motorcycle would have been a safer machine with crash bars installed, there is no practical end to the myriad of improvements or additions that might be made to any given product to make it a safer product.

If a manufacturer, with full knowledge of a given situation, fails to incorporate known features, the failure of which cannot be readily discerned, then there is a possibility of litigation concerning the manufacturer's negligent conduct. Where, however, as in the case at bar, the condition of the motorcycle was open and obvious to all who approached the machine, the injured party assumes the risk.

I believe the *Bemis* case applies and that the trial court was correct in granting Suzuki's motion for summary judgment. The Court of Appeals was correct in so holding.

I would deny transfer in this case.