Tracy A. MARSHALL, Appellant–
Plaintiff,

v.

CLARK EQUIPMENT COMPANY and
Clark Lift Corporation of Indiana,
Appellees–Defendants.

No. 79A05–9510–CV–420.

Court of Appeals of Indiana.

June 24, 1997.

David V. Scott, Scott & Forrest, New Albany, for Appellant–Plaintiff.

Robert P. Stoner, Spangler Jennings & Dougherty, Valparaiso, George W. Soule, Bowman & Brooke, Minneapolis, MN, for Appellees–Defendants.

## OPINION

SHARPNACK, Chief Judge.

Tracy Marshall appeals the judgment entered in favor of the defendant-appellees, Clark Equipment Company and Clark Lift Corporation (collectively "the Appellees"). Marshall is seeking damages for an injury sustained while operating a forklift. He raises three issues for our review which we consolidate and restate as whether the trial court properly instructed the jury. We affirm.[1]

The facts most favorable to the judgment follow. On January 19, 1991, Marshall worked at the Subaru–Isuzu automotive assembly plant in Lafayette, Indiana. During the day, Marshall operated a stand-up forklift, which was designed and manufactured by the Appellees. At the end of his shift, Marshall drove the forklift back to the maintenance garage. Although the forklift had two pedals, one for each foot, Marshall operated both pedals with his right foot and allowed his left foot to rest outside the driver's compartment. When Marshall backed the forklift into the garage, he was momentarily distracted by another worker. Before Marshall could stop the forklift, he backed into a steel post and crushed his left foot

---

1. After this appeal was fully briefed, the Appellees filed a motion to strike the appendix of Marshall's reply brief. Upon review, we now order that this motion be denied.

between the post and the forklift. Due to the severity of the injury, Marshall's foot was later amputated.

On September 16, 1992, Marshall filed a product liability action against the Appellees. When the Appellees filed an answer denying the allegations, Marshall amended his complaint. After further procedural activities, Marshall again amended his complaint, limiting his claim to an "enhanced injury" claim. Specifically, Marshall asserted that the Appellees were liable because they "did not equip the stand-up forklift involved in this accident with a rear door which would have prevented Tracy Marshall's foot from being cut off when [they] knew that such injuries were foreseeable and that a door on the rear of the forklift would prevent them from occurring." Record, p. 26.

On June 27, 1995, the trial court conducted a jury trial. After the presentation of the evidence, the parties tendered their proposed jury instructions to the trial court. Marshall tendered seven instructions, five of which the trial court refused. Thereafter, Marshall objected to the trial court's final instructions. On June 30, 1995, the jury returned a verdict in favor of the Appellees. Marshall now appeals.

The sole issue raised for our review is whether the trial court properly instructed the jury. Marshall argues that the trial court improperly denied two of his tendered instructions. In addition, he argues that the trial court erred in giving two of its instructions. We will address each of these arguments in turn.

## I.

Marshall first argues that the trial court erred when it failed to give his tendered jury instructions. The giving of jury instructions is a duty entrusted to the discretion of the trial court, and its decision will not be disturbed unless there is an abuse of that discretion. *Morris v. K-Mart, Inc.*, 621 N.E.2d 1147, 1148 (Ind.Ct.App.1993), *reh'g denied, trans. denied.* A party is generally entitled to have a tendered instruction read to the jury. *Id.* On review, we will reverse the trial court's refusal to give a tendered instruction when (1) the instruction is a cor-

rect statement of law, (2) it is supported by the evidence, (3) it does not repeat material adequately covered by other instructions, and (4) the substantial rights of the tendering party would be prejudiced by the failure to give the instruction. *Underly v. Advance Mach. Co.*, 605 N.E.2d 1186, 1191 (Ind.Ct. App.1993).

Marshall first challenges the trial court's denial of his tendered instruction # 6, which provided:

"It is only when a product is dangerous by its very nature when used for its intended purpose that the manufacturer can satisfy its obligation to the consuming public by providing an adequate warning of the danger, so that the product, as delivered, is not defective and unreasonably dangerous.

If the product can be made reasonably safe by selecting an available alternative design, the manufacturer must do so rather than merely place a warning on the product."

Record, p. 348.

Contrary to Marshall's contention, this tendered instruction does not correctly state the law in Indiana. In his brief, Marshall admits that there are no Indiana cases which directly support his tendered instruction. Instead, Marshall contends that his tendered instruction is consistent with "Indiana's Product Liability Act and the case law that has interpreted the Act." Appellant's brief, p. 17. However, a review of this authority reveals that it does not support such a contention.

In Indiana, actions for strict liability in tort are governed by the Product Liability Act, Ind.Code §§ 33–1–1.5–1, *et seq. York v. Union Carbide Corp.*, 586 N.E.2d 861, 867 (Ind.Ct.App.1992); *see Senco Prod., Inc. v. Riley*, 434 N.E.2d 561, 567 (Ind.Ct.App.1982), *reh'g denied.* The section imposing strict liability provides in part:

"(a) ... a person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or the user's or consumer's property is subject to liability for physical harm

caused by that product to the user or consumer or to the user's or consumer's property if that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition, and if:

(1) The seller is engaged in the business of selling such a product; and

(2) The product is expected to and does reach the user or consumer without substantial alteration in the condition in which it is sold by the person sought to be held liable under this chapter.

(b) The rule stated in subsection (a) applies although:

(1) The seller has exercised all reasonable care in the manufacture and preparation of the product; and

(2) The user or consumer has not bought the product from or entered into any contractual relation with the seller.

However, in any action based on an alleged design defect in the product or based on an alleged failure to provide adequate warnings or instructions regarding the use of the product, the party making the claim must establish that the manufacturer or seller failed to exercise reasonable care under the circumstances in designing the product or in providing the warnings or instructions."

I.C. § 33–1–1.5–3(a),(b).

■ Pursuant to this statute, the manufacturer is liable when it "puts into the stream of commerce any product without reasonable (adequate) warnings thereby leaving it in a condition unreasonably dangerous to any user, if such warnings could have been given in the exercise of reasonable diligence." *Jarrell v. Monsanto Co.*, 528 N.E.2d 1158, 1166 (Ind.Ct.App.1988), *reh'g denied, trans. denied.* The failure to adequately warn cannot alter the basic nature of the product, but may render the product unreasonably dangerous. *Id.* While warnings cannot make a dangerous product safe, such warnings may avert liability. *Id.*

In *Dias v. Daisy–Heddon*, we addressed the circumstances under which the defendant can avoid liability by providing adequate

warnings. *Dias v. Daisy–Heddon*, 180 Ind. App. 657, 660, 390 N.E.2d 222, 224 (1979), *reh'g denied, trans. denied.* In *Dias*, the plaintiff was injured by a pellet from a BB gun which was thought to be unloaded. In his complaint, the plaintiff claimed that the gun's instructions failed to adequately warn of potential dangers and that the gun was defectively designed because its loading mechanism was unreasonably dangerous. There was no dispute that if the instructions had been followed, then the gun would have been safely unloaded and there would have been no injury. During the trial, the plaintiff submitted a gun, which had an alternative design, and its instructions as an exhibit. The plaintiff sought to demonstrate that this gun was safer to unload than the gun used in the accident. The defendant's objection to the admission of this exhibit was sustained.

On appeal, we affirmed the trial court's decision to exclude the exhibit because neither the gun's instructions nor its design were the proximate cause of the plaintiff's injury. *Id.* at 666–667, 390 N.E.2d at 227. First, we addressed the adequacy of the instructions. *Id.* at 663, 390 N.E.2d at 225–226. We determined that the gun's instructions and warnings adequately informed the user how to safely unload the gun. *Id.* Specifically, we stated, "[w]here warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." *Id.* at 662, 390 N.E.2d at 225 (quoting RESTATEMENT (SECOND) OF TORTS § 402A cmt. J (1976)). We concluded that had the user of the gun followed the instructions, the gun would not have misfired causing an injury. *Id.* at 663, 390 N.E.2d at 225.

Next, we addressed whether the design of the gun was unreasonably dangerous. *Id.* at 665, 390 N.E.2d at 227. We determined that the trial court erred when it excluded the exhibit showing an alternative design for the gun. *Id.* We stated that "evidence of alternative design may be relevant to the question of whether the design in question is unreasonably dangerous." *Id.* at 664, 390 N.E.2d at 226. Nevertheless, we held that because

other evidence of an alternative design was admitted, the exclusion of the exhibit did not constitute reversible error. *Id.* at 666, 390 N.E.2d at 227. In conclusion, we stated:

"[U]nder the evidence presented at trial the jury could have well decided that as to design, the BB gun in the careful hands of a consumer was not dangerous for its intended use. It cannot be said as a matter of law that [the defendant's] design or instructions for the [BB gun] were the proximate cause of [the plaintiff's] injury."

*Id.* (citations omitted).

■ Based on the rationale set out in *Dias,* a manufacturer may avoid liability by placing adequate warnings on a product even when there is evidence of a "safer" alternative design. *See id.* at 664, 390 N.E.2d at 226. As shown in *Dias,* evidence of an alternative design is not relevant to the issue of whether inadequate warnings make the product unreasonably dangerous, but rather, such evidence is relevant to the issue of "whether the *design in question* is unreasonably dangerous." *Id.* (emphasis added).

■ Marshall's tendered instruction # 6 provides that when "the product can be made reasonably safe by selecting an available alternative design, the manufacturer must do so rather than merely place a warning on the product." Record, p. 348. Such a provision conflicts with the rationale set out in *Dias.* Therefore, because the tendered instruction does not correctly state the law in Indiana, Marshall was not entitled to have the instruction read to the jury.[2] *See Underly,* 605 N.E.2d at 1191. Accordingly, the trial court did not abuse its discretion by refusing to give tendered instruction # 6. *See Morris,* 621 N.E.2d at 1148.

Next, Marshall challenges the trial court's denial of his tendered instruction # 3 on the enhanced injury claim. This instruction provided:

"A product is defective in its design and unreasonably dangerous if the manufacturer fails to adopt an available alternative design which would prevent an injury

which could foreseeably result from the use or foreseeable misuse of the product.

Therefore, you may find the forklift in question was defective in its design and unreasonably dangerous if:

1. The existing design did not prevent a foreseeable injury from a foreseeable use or misuse of the product; and,

2. Defendant Clark Equipment Company failed to adopt a reasonable available alternative design which would have prevented this injury."

Record, p. 346. Marshall asserts that this instruction correctly sets forth the plaintiff's burden of proof in an enhanced injury claim. We disagree.

■ An enhanced injury action is defined as "one brought against a party whose activity (product) caused the plaintiff's injuries to be exacerbated although the activity was not a contributing cause of the occurrence from which all the injuries arose...." *Masterman v. Veldman's Equip., Inc.,* 530 N.E.2d 312, 314 (Ind.Ct.App.1988), *reh'g denied, trans. denied.* In Indiana, claims of enhanced injury are valid causes of action. *Miller v. Todd,* 551 N.E.2d 1139, 1142 (Ind. 1990), *reh'g denied; Jackson v. Warrum,* 535 N.E.2d 1207, 1212 (Ind.Ct.App.1989) (noting that enhanced injury claims are also referred to as enhancement of injury, second collision, or crashworthiness claims). In *Jackson,* we set out the plaintiff's burden of proof for an enhanced injury claim as follows:

"First, the plaintiff must prove that the manufacturer placed into the stream of commerce a defectively designed, unreasonably dangerous product. Second, the plaintiff must prove that a feasible safer alternative product design exists. Third, the plaintiff must prove that after the original impact or collision the defectively designed product proximately caused (i.e. enhanced) the injuries that resulted."

*Jackson,* 535 N.E.2d at 1220.

■ Marshall's tendered instruction # 3 fails to correctly state the plaintiff's burden of proof for an enhanced injury claim as set

---

**2.** In support of his argument, Marshall relies upon numerous decisions from other jurisdictions. However, we need not address these cases in our analysis because we have sufficient authority in Indiana.

out in *Jackson*.[3] Instead, the tendered instruction merely provides a statement concerning defective designs without discussing the elements of an enhanced injury claim. In fact, the tendered instruction does not even refer to the term "enhanced injury." Therefore, Marshall's argument that tendered instruction # 3 correctly sets forth the plaintiff's burden of proof for an enhanced injury claim is without merit. *See Underly,* 605 N.E.2d at 1191. Accordingly, the trial court did not abuse its discretion by refusing to give tendered instruction # 3. *See Morris,* 621 N.E.2d at 1148.

## II.

Marshall next challenges the trial court's final instructions. During the trial, the court read final instruction # 7.04, which was based upon I.C. § 33–1–1.5–4.[4] This instruction provided:

> "At the time of the occurrence being considered, there was in full force and effect in the state of Indiana, a statute that provides as follows:
>
> (a) The defenses in this section are defenses of actions in strict liability in tort. The burden of proof of any defense raised in a product liability action is on the party raising the defense.
>
> (b) With respect to any product liability action based on strict liability in tort:
>
> (1) It is a defense that the user or consumer bringing the action knew of the defect and was aware of the danger and nevertheless proceeded and was injured by it.
>
> (2) It is a defense that a cause of the physical harm is a misuse of the product by the claimant or any other person not reasonably expected by the seller at the time the seller sold or otherwise conveyed the product to another party. Where the physical harm to the claimant is caused jointly by a defect in the product which made it unreasonably dangerous when it left the seller's hands and by the misuse of the product by a person other than the claimant, then the conduct of that other person does not bar recovery by the claimant for the physical harm.
>
> (3) When the physical harm is caused by a defective product, it is a defense that the design, manufacturing, inspection, packaging, warning, or labeling of the product was in conformity with the generally recognized state of the art at the time the product was designed, manufactured, packaged, and labeled."

Record, p. 355.

In addition, the trial court read final instruction # 7.07, which provided:

> "The defense of misuse is available when the product is used for a purpose not reasonably foreseeable to the manufacturer or when the product is used in a manner not reasonably foreseeable for a reasonably foreseeable purpose. The contributory negligence of the plaintiff in failing to discover a defect in a product or in failing to guard against the existence of a defect is not misuse of the product and is, therefore, not a defense to strict liability in tort. A consumer who uses a product after having discovered a defect or who uses a product in contravention of a legal sufficient warning misuses the product and, is subject to the defense of misuse."

Record, p. 358.

In his brief, Marshall argues that these "instructions pertaining to misuse and warnings are inappropriate when the plaintiff's only theory of liability against the defendants was one of enhanced injury." Appellant's brief, p. 29. Essentially, Marshall maintains that the giving of the instructions on the defense of misuse was erroneous in this enhanced injury case.[5] We disagree.

---

**3.** We note that *Jackson* eliminated the requirement that the plaintiff prove the hypothetical injuries that would have resulted in an accident involving a properly designed product. *See id.* at 1216.

**4.** This statute was amended in 1995 with little substantive change.

**5.** In his reply brief, Marshall argues for the first time on appeal that final instruction # 7.07 was not a correct statement of the law. However, because a reply brief only enables the appellant

As previously stated, enhanced injury claims are valid causes of action in Indiana. *See Miller*, 551 N.E.2d at 1142. "An enhanced injury design defect products liability case is no different than any other products liability case." *Jackson*, 535 N.E.2d at 1219; *see Masterman*, 530 N.E.2d at 314–315 (stating that the doctrine of enhanced injury is "a variation of strict liability theory"). In effect, the doctrine of enhanced injury merely expands the proximate cause requirement to include enhanced injuries. *Miller*, 551 N.E.2d at 1142; *see Jackson*, 535 N.E.2d at 1220 (holding that to establish an enhanced injury claim, the plaintiff must prove that the "defectively designed product proximately caused (i.e. enhanced) the injuries that resulted").

■■■■ Proximate cause is established when the injury caused by the product is a natural and probable consequence which was, or should have been, reasonably foreseen or anticipated in light of the attendant circumstances. *Montgomery Ward & Co. v. Gregg*, 554 N.E.2d 1145, 1156 (Ind.Ct.App.1990), *reh'g denied, trans. denied*. An intervening cause, such as a misuse of the product, will relieve the manufacturer of liability when the intervening acts could not have been reasonably foreseen by the manufacturer. *Id.* Misuse is a defense which completely bars a product liability claim. *Underly*, 605 N.E.2d at 1189. "It is a defense that a cause of the physical harm is a misuse of the product by the claimant or any other person not reasonably expected by the seller at the time the seller sold or otherwise conveyed the product to another party." I.C. § 33–1–1.5–4(b)(2). Therefore, to prove this defense, the seller must establish that the plaintiff's misuse of the product, from the seller's perspective, was not reasonably foreseeable. *Underly*, 605 N.E.2d at 1189. The foreseeability of an intervening misuse is generally a question for the jury. *Id.*

■■■■ Turning to the present case, Marshall sought a recovery based on an en-

hanced injury claim. Essentially, Marshall had to show that the alleged design defect in the forklift proximately caused, that is enhanced, his injuries. *See Jackson*, 535 N.E.2d at 1220. To establish this proximate cause requirement, Marshall had to prove that his injury was reasonably foreseeable in light of the circumstances. *See Gregg*, 554 N.E.2d at 1156. As such, the Appellees were entitled to raise the defense that Marshall's misuse of the forklift was an intervening cause which was not reasonably foreseeable. *See id.*

During the trial, Marshall claimed that the forklift's design was defective because it failed to incorporate a rear door. In support of this claim, Marshall presented the testimony of Richard McLay, an engineer. McLay stated that the forklift's design was unreasonably dangerous because "[i]t lacked a safety door." Supplemental Record, p. 397. Next, John Sevart, also an engineer, confirmed that the forklift was unreasonably dangerous and that a rear door would have prevented Marshall's injuries. In addition, Sevart testified that it was foreseeable that the forklift would back into objects, resulting in an enhanced injury.

In response, the Appellees asserted that Marshall misused the forklift by operating both pedals with his right foot and allowing his left foot to rest outside the driver's compartment. In support of this assertion, the Appellees presented the testimony of David Miller, a product safety director. Miller stated that Marshall operated the forklift "in an unforeseeable manner" and that "it was very strange the way he operated the machine." Supplemental Record, p. 236.

Based on this evidence, the jury had to determine whether Marshall's misuse of the forklift was reasonably foreseeable. *See Underly*, 605 N.E.2d at 1189. "If there is any evidence to support the instruction, it was properly given." *Id.* at 1191. Given that Miller testified that Marshall misused the

---

to respond to the appellee's brief, the appellant may not assert new issues therein. Ind. Appellate Rule 8.3(C); *Crist v. K–Mart Corp.*, 653 N.E.2d 140, 144 (Ind.Ct.App.1995), *reh'g denied,*

*trans. denied.* Therefore, Marshall has waived this issue for our review. *See Mileusnich v. Novogroder Co.*, 643 N.E.2d 937, 940 n. 3 (Ind.Ct. App.1994), *reh'g denied.*

forklift by operating it in an unforeseeable manner, we find sufficient evidence to support the trial court's instructions on misuse. *See id.* Accordingly, we hold that the trial court did not err in giving final instructions # 7.04 and # 7.07.

For the foregoing reasons, the judgment of the trial court is affirmed in all respects.

Affirmed.

BARTEAU and FRIEDLANDER, JJ., concur.