Yvonne E. **BARNARD**, Administratrix of the Estate of Mark E. Barnard, Deceased, and Yvonne E. Barnard, Individually, Appellant–Petitioner,

v.

**SATURN CORPORATION, A DIVISION OF GENERAL MOTORS CORPORATION**, General Motors Corporation, and Saturn of Northwest Indiana, Inc., Seeburn division of Ventra Group, Inc., Appellee–Respondents.

No. 64A05–0206–CV–291.

Court of Appeals of Indiana.

June 30, 2003.

1024

Jay Charon, Jon S. Diston, Spanger, Jennings & Dougherty, P.C., Merrillville, IN, Attorneys for Appellant.

Julia Blackwell, Nicholas C. Pappas, Daniel D. Bobilya, Locke Reynolds, LLP, Indianapolis, IN, Attorneys for Appellee.

James R. Branit, John J. Bullaro, Thomas A. Carton, Bullaro & Carton, Chartered, Chicago, IL, Attorneys for Appellee Seeburn.

## OPINION

ROBB, Judge.

Yvonne E. Barnard, administratrix of the estate of Mark E. Barnard, brought a wrongful death product liability suit in the Porter Superior Court against Saturn Corporation, a division of General Motors; General Motors Corporation; Saturn of Northwest Indiana, Inc. (collectively, "General Motors"); and Seeburn Division of Ventra Group, Inc. ("Seeburn"). The trial court granted both General Motors' and Seeburn's motions for summary judgment. We affirm.

### Issues

Yvonne raises several issues for our review, which we consolidate and restate as follows:

1. Whether the trial court properly granted summary judgment on the basis of product misuse;

2. Whether the car jack's specific design enhanced Mark's injuries;

3. Whether the warnings on the jack were adequate.

### Facts and Procedural History [1]

Mark and Yvonne purchased a 1996 Saturn SL1 from Saturn of Northwest Indiana, Inc. in May of 1996 that came equipped with a Seeburn car jack in the trunk. A spare-tire cover was located on the floor of the trunk of the vehicle. In order to reach the jack, a user of the car jack must physically remove the spare-tire cover. On the jack itself there were warnings and instructions. In addition, there were warnings within the Saturn owner's handbook and on the spare-tire cover pertaining to use of the jack. The specific warning on the jack itself stated:

> "CAUTION! To help avoid personal injury, follow jacking instructions and use this jack only for changing tires on this vehicle."

Appellee General Motor's Appendix at 17. In addition to the warning provided on the jack itself, a warning in the vehicle owner's handbook stated:

> "CAUTION! Changing a tire can cause an injury. The vehicle can slip off the jack and rollover you or other people. You and the other people could be badly injured."

Appellee General Motor's Appendix at 19. Another warning on page 236 of the owner's handbook stated:

> "CAUTION! To be even more certain the vehicle won't move, you can put blocks at the front and the rear of the tire farthest away from the one being changed. That would be the tire on the

other side of the vehicle and at the opposite end."

Appellee General Motor's Appendix at 19. A warning on page 238of the owner's handbook stated:

> "CAUTION! Getting under a vehicle when it is jacked up is dangerous. If the vehicle slips off the jack, you could be badly injured. Never get under a vehicle when it is supported only by a jack."

Appellee General Motor's Appendix at 20. A warning on page 242 of the owner's handbook stated:

> "CAUTION! Getting under the vehicle when it is jacked up is dangerous. If the vehicle slips off the jack, you could be badly injured."

Appellee General Motor's Appendix at 21. Also, a warning on page 266 of the owner's handbook stated:

> "CAUTION! Changing your engine's oil can cause injury. Getting under the vehicle when it is jacked up is dangerous. If the vehicle slips off the jack or ramps, you could be badly injured. Never get under a vehicle when it is supported only by a jack."

Appellee General Motor's Appendix at 22. Finally, warnings on the spare-tire cover in the trunk stated:

> "TO HELP AVOID PERSONAL INJURY:
> - Follow all jacking and storage instructions.
> - Use jack only for lifting this car during tire change.
> - Never get under the car or start or run engine while the car is supported by the jack.

---

1. We held oral argument in this case on April 14, 2002, at Ivy Tech State College in Lafayette, Indiana. We thank the university for its hospitality and extend our appreciation to counsel for their presentations.

● Before changing tire: Park on a level surface ..."

Appellee General Motor's Appendix at 23.

On March 16, 1997, Mark informed his wife that he was going to change the oil in their Saturn vehicle. Yvonne observed Mark as he drove the front wheels of the vehicle onto the sidewalk in front of the family home. While Yvonne was inside cooking dinner she heard a noise coming from outside the house. When she investigated, she found Mark pinned underneath the car. The front wheels were no longer on the sidewalk, but were flush against the sidewalk curb with the passenger side front wheel off the ground. Further, she observed that the car jack was leaning to one side, wedged in and stuck on the passenger side of the vehicle.

Yvonne initially attempted to drive the vehicle off of her husband, however the car would not move. She then attempted to remove the jack from underneath the car and use it in an attempt to free Mark. The jack, manufactured by Seeburn, operated in a scissor action. As the center nut is turned clockwise the jack raises. If the jack reaches its maximum height and the user continues to turn the center nut with 70 foot pounds, then the center nut will shear off. Once the center nut shears off, the jack becomes inoperable. When Yvonne applied force to the handle of the jack in order to try to free Mark the jack's center nut sheared off, rendering the jack inoperable.

Emergency personnel eventually extricated Mark from underneath the vehicle. However, Mark later died at the hospital on March 21, 1997, from the injuries he sustained.

On April 28, 1998, Yvonne filed suit against General Motors and Seeburn for damages resulting from Mark's death. On March 27, 2002, General Motors moved for summary judgment. Shortly thereafter, Seeburn filed its own motion for summary judgment. On May 22, 2002, the trial court conducted a hearing and granted both General Motors' and Seeburn's motions for summary judgment. Yvonne filed her notice of appeal with the trial court on June 17, 2002, and this appeal ensued.

### Discussion and Decision

### I. Product Misuse

The trial court found that there were no genuine issues of material fact and General Motors and Seeburn were entitled to judgment as a matter of law on the basis of product misuse. Yvonne, however, contends that the trial court improperly granted summary judgment in favor of General Motors and Seeburn because Mark's misuse was foreseeable to the manufacturers. Thus, she argues, General Motors and Seeburn are not entitled to summary judgment. We disagree.

### A. Standard of Review

In determining the propriety of summary judgment, we apply the same standard as the trial court. *Harris v. Traini*, 759 N.E.2d 215, 220 (Ind.Ct.App.2001), *trans. denied*. Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* We construe all facts and reasonable inferences to be drawn from those facts in favor of the non-moving party. *Id.* The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Id.*

A trial court's grant of summary judgment is clothed with a presumption of validity, and the party that lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *Zemco Mfg., Inc. v. Navistar*

*Int'l Transp. Corp.*, 759 N.E.2d 239, 244 (Ind.Ct.App.2001), *trans. denied.* A grant of summary judgment may be affirmed upon any theory supported by the designated materials. *Id.* at 244–45.

■ On appeal, we do not reweigh the evidence, but we liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial. *Id.* To be considered genuine for summary judgment purposes, a material issue of fact must be established by sufficient evidence in support of the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial. *Street v. Shoe Carnival, Inc.*, 660 N.E.2d 1054, 1056–57 (Ind.Ct.App.1996).[2]

### B. Misuse of the Car Jack

Yvonne contends that the trial court improperly granted summary judgment in favor of General Motors and Seeburn because Mark's misuse was foreseeable to the manufacturers. Therefore, she contends General Motors and Seeburn are not entitled to summary judgment.

■ Indiana Code section 34–20–2–1 states the grounds for a products liability action:

[A] person who leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property is subject to liability for physical harm caused by that product to the user or consumer or to the user's or consumer's property if:

(1) that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition;

(2) the seller is engaged in the business of selling the product; and

(3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable under this article.

Indiana Code section 34–20–6–4 provides an affirmative defense to a products liability claim when a product is misused. The statute reads:

It is a defense to an action under this article ... that a cause of the physical harm is a misuse of the product by the claimant or any other person not reasonably expected by the seller at the time the seller sold or otherwise conveyed the product to another party.

Foreseeable use and misuse are typically questions of fact for a jury to decide. *Vaughn v. Daniels Co. (West Virginia), Inc.*, 777 N.E.2d 1110, 1129 (Ind.Ct.App.

---

**2.** Yvonne contends the trial court erroneously weighed evidence and improperly decided material issues of fact in favor of the moving party. In support of her argument, Yvonne cites to numerous examples of designated evidence and issues of fact where she believes the trial court misapplied the standard of review, ignored favorable facts, and improperly resolved conflicting inferences arising from the facts in favor of the moving party. Appellant's Brief at 11–16. Because our review of a grant of summary judgment is *de novo*, we will consider all of Yvonne's designated evidence anew in the following discussion and determine whether summary judgment was properly granted. *Zemco Mfg.*, 759 N.E.2d at 244–45. Thus, separately determining whether the trial court misapplied the standard of review to particular designated evidence, ignored particular facts, and improperly resolved conflicting inferences in favor of General Motors and Seeburn is unnecessary here. Those specific issues are raised in Yvonne's arguments and will be addressed when appropriate.

2002) (citing *Montgomery Ward & Co. v. Gregg,* 554 N.E.2d 1145, 1151–52 (Ind.Ct. App.1990)), *trans. denied.* However, some courts have granted summary judgment on the defense of misuse. *Vaughn,* 777 N.E.2d at 1129 (citing *Estrada v. Schmutz Mfg. Co.,* 734 F.2d 1218, 1221 (7th Cir. 1984)) (barring claim of worker who attempted to ink printer by hand where it was not intended that printer be inked by hand); *see also Latimer v. General Motors Corp.,* 535 F.2d 1020, 1024 (7th Cir.1976) (holding manufacturer had no duty to anticipate misuse). The defendants bear the burden of proving that plaintiff misused the product in an unforeseeable manner. *Marshall v. Clark Equipment Co.,* 680 N.E.2d 1102, 1108 (Ind.Ct.App.1997), *trans. denied.*

### 1. Misuse As A Complete Defense

■ A threshold issue is whether the affirmative defense of misuse acts as a complete bar to recovery in a products liability action. This court has stated in dicta in previous cases that misuse is a complete defense to a products liability claim. *See Morgen v. Ford Motor Company,* 762 N.E.2d 137, 143 (Ind.Ct.App.2002), *trans. granted,* 783 N.E.2d 701 (Ind.2002); *Indianapolis Athletic Club, Inc. v. Alco Standard Corp.,* 709 N.E.2d 1070, 1072 (Ind.Ct.App.1999), *trans. denied; Marshall,* 680 N.E.2d at 1108. However, we believe that the defense of misuse should be compared with all other fault in a case and does not act as a complete bar to recovery in a products liability action. *See Chapman v. Maytag Corp.,* 297 F.3d 682, 689 (7th Cir.2002) (stating "... the district court did not err when it determined that the defense of misuse is not a complete defense, but instead an element of comparative fault."), *affirming Chapman v. Maytag Corp.,* 2000 WL 1038183 (S.D.Ind. 2000).

In 1995, the General Assembly required that all fault in products liability cases be comparatively assessed:

(a) In a product liability action, the fault of the person suffering the physical harm, as well as the fault of all others who caused or contributed to cause the harm, shall be compared by the trier of fact in accordance with [the comparative fault act].

(b) In assessing percentage of fault, the jury shall consider the fault of all persons who contributed to the physical harm, regardless of whether the person was or could have been named as a party, as long as the nonparty was alleged to have caused or contributed to cause the physical harm.

Ind.Code § 34–20–8–1; *Bondex Intern. v. Ott,* 774 N.E.2d 82, 85 (Ind.Ct.App.2002).

For purposes of the products liability act, the legislature defined "fault" as:

... an act or omission that is negligent, willful, wanton, reckless, or intentional toward the person or property of others. The term includes the following:

(1) Unreasonable failure to avoid an injury or to mitigate damages.

(2) A finding under Ind.Code 34–20–2 ... that a person is subject to liability for physical harm caused by a product, notwithstanding the lack of negligence or willful, wanton, or reckless conduct by the manufacturer or seller.

Ind.Code § 34–6–2–45(a). As stated above, misuse is a defense to a products liability action where "a cause of the physical harm is a misuse of the product by the claimant ... not reasonably expected by the seller." Ind.Code § 34–20–6–4. We have further defined misuse as "use for a purpose or in a manner not foreseeable by the manufacturer." *Indianapolis Athletic Club,* 709 N.E.2d at 1073.

By specifically directing that the jury compare all "fault" in a case, we believe that the legislature intended the defense of misuse to be included in the comparative fault scheme. *See Chapman,* 2000 WL 1038183. A plaintiff's misuse falls within the statutory definition of "fault" as an "act or omission ... that is ... intentional toward the ... property of others," including an "unreasonable failure to avoid an injury or to mitigate damages." Ind.Code § 34-6-2-45(a). There is also nothing in the comparative fault statute indicating misuse is to be exempted from the scope of the fault requirement.

In addition, the decisions General Motors and Seeburn cite for the premise that misuse acts as a complete bar to recovery rely upon a case decided prior to the legislature's adoption of the comparative fault statute for products liability cases. *See Morgen,* 762 N.E.2d at 143 (relying upon *Indianapolis Athletic Club, Inc.,* 709 N.E.2d at 1072.); *Indianapolis Athletic Club, Inc.,* 709 N.E.2d at 1072 (relying upon *Marshall v. Clark Equipment Co.,* 680 N.E.2d 1102, 1108 (Ind.Ct.App.1997)); *Marshall,* 680 N.E.2d at 1108 (relying upon *Underly v. Advance Mach. Co.,* 605 N.E.2d 1186, 1189 (Ind.Ct.App.1993)). We stated in *Underly* that misuse is a defense that will completely bar recovery. *Id.* However, *Underly* was decided before comparative fault was added to the products liability statute and thus was decided under contributory negligence principles. For the above reasons, we believe the defense of misuse no longer acts as a complete defense under the comparative fault scheme and we will review any misuse in this case under principles of comparative fault.

### 2. Misuse Of The Jack As A Matter of Law

■ On their motion for summary judgment, General Motors and Seeburn bear the burden to show that Mark misused the jack in a manner unforeseeable to the manufacturers. They contend that Mark misused the jack by ignoring the multiple warnings present, placing the front wheels of the vehicle up on the sidewalk, failing to block the tires, and getting under the car in order to change the oil. *See supra* at 2–3.

As previously discussed, misuse is a defense to a products liability action where "a cause of the physical harm is a misuse of the product by the claimant ... not reasonably expected by the seller." Ind. Code § 34-20-6-4. We have further defined misuse as "use for a purpose or in a manner not foreseeable by the manufacturer." *Indianapolis Athletic Club,* 709 N.E.2d at 1073. In discussing the similar defense of incurred risk, this court stated "[a] consumer who ... uses a product in contravention of a legally sufficient warning, misuses the product, and in the context of the defense of incurred or assumed risk, is subject to the defense of misuse." *Hinkley v. Montgomery Ward, Inc.,* 497 N.E.2d 255, 257 (Ind.Ct.App.1986) (citing *Perfection Paint and Color Company v. Konduris,* 147 Ind.App. 106, 258 N.E.2d 681, 689 (1970)). In *Dias v. Daisy–Heddon,* plaintiff was injured by a pellet from a BB gun that he thought was unloaded. 180 Ind.App. 657, 390 N.E.2d 222, 224 (Ind.Ct.App.1979). We determined that "where warning is given, the seller may reasonably assume that it will be read and heeded ..." *Id.* at 225. The court concluded that had the user of the gun followed the instructions, the gun would not have caused an injury. *Id.* at 225; *See also Marshall v. Clark Equipment Co.,* 680 N.E.2d 1102, 1105 (Ind.Ct.App.1997) (explaining and approving *Dias*).

In a similar case, the Seventh Circuit determined that a plaintiff was not entitled to recovery where he ignored multiple

warnings that would have prevented his injuries that occurred while he was operating a forklift. *See Leon v. Caterpillar Industrial, Inc.*, 69 F.3d 1326, 1343–44 (7th Cir.1995). The plaintiff admittedly ignored the safety warnings and instructions; however, he argued that the manufacturers of the forklift should have foreseen the misuse. The Seventh Circuit held that the forklift manufacturer could not reasonably expect that plaintiff would fail to comply with four independent safety regulations where compliance with one of the instructions would have prevented the injury. *Id.*

Here, instead of heeding the multiple warnings and instructions General Motors and Seeburn provided for proper use of the jack, Mark disregarded them. The undisputed facts indicate that he parked the vehicle so that the two front wheels were up on the sidewalk and the car was at an incline, even though the warnings stated that the car should be parked on a level surface. Mark then got underneath the vehicle with only the jack's support, which was also in direct contravention of the safety warnings. Mark did not place blocks behind the wheels to prevent the car from moving as the instructions recommended, and there is evidence that a block of wood was placed underneath the jack as well. Although it is unlikely, in light of the nature and purpose of a car jack, that General Motors and Seeburn could not have reasonably foreseen a user ever deciding to get underneath a vehicle supported solely by a jack, Mark deployed this particular jack in direct contravention of its reasonably expected permitted use.[3] *See Dias*, at 390 N.E.2d at 225; *Leon*, 69

F.3d at 1343–44. Thus, we believe Mark misused the jack.

### 3. Misuse Under Comparative Fault

 Under the comparative fault scheme, the trier of fact shall compare misuse with all other fault in the case. *See* Ind.Code § 34–20–8–1. Fault allocation may be decided as a matter of law only if the evidence is undisputed and the fact finder could reach only one conclusion. *Creasy v. Rusk*, 696 N.E.2d 442, 448–49 (Ind.Ct.App.1998). To allocate fault to a plaintiff as a matter of law on a theory of misuse, the undisputed evidence must conclusively show that plaintiff's use of the product was not reasonably expectable to the seller. *See id.* Under the comparative fault scheme, Yvonne would be precluded from recovering from General Motors and Seeburn if the amount of fault attributed to Mark was greater than the fault attributed to General Motors and Seeburn. *See* Ind.Code § 34–51–2–6.

 As discussed above, we have determined that Mark misused the jack. We also believe that under these particular circumstances no reasonable trier of fact could find that Mark was less than fifty percent at fault for the injuries that he sustained. Because Mark misused the jack and no reasonable trier of fact could find that Mark was less than fifty percent at fault for his injuries, we hold that General Motors and Seeburn are entitled to judgment as a matter of law.

### II. Enhancement of Injury

 Yvonne contends that the design feature of the jack was a hidden and dangerous design feature which General Motors and Seeburn never warned about and

---

**3.** If a manufacturer could not foresee a particular use, they would not know to warn against it. Thus, we believe the term "reasonably expected use" must include the manufacturer's reasonably expected permitted use. If not, the moment a seller or manufacturer provided a specific warning against a particular use, they would have admitted to foreseeing use of the product in that proscribed manner.

enhanced Mark's injuries to the point of death.

■ An enhanced injury action is defined as "one brought against a party whose activity (product) caused the plaintiff's injuries to be exacerbated although the activity was not a contributing cause of the occurrence from which all the injuries arose. . . ." *Masterman v. Veldman's Equip., Inc.*, 530 N.E.2d 312, 314 (Ind.Ct. App.1988), *trans. denied.* In Indiana, claims of enhanced injury are valid causes of action. *Miller v. Todd*, 551 N.E.2d 1139, 1142 (Ind.1990); *Jackson v. Warrum*, 535 N.E.2d 1207, 1212 (Ind.Ct.App. 1989) (noting that enhanced injury claims are also referred to as enhancement of injury, second collision, or crashworthiness claims). In Jackson, we set out the plaintiff's burden of proof for an enhanced injury claim as follows:

> First, the plaintiff must prove that the manufacturer placed into the stream of commerce a defectively designed, unreasonably dangerous product. Second, the plaintiff must prove that a feasible safer alternative product design existed. Third, the plaintiff must prove that after the original impact or collision the defectively designed product proximately caused (i.e. enhanced) the injuries that resulted.

*Jackson*, 535 N.E.2d at 1220.

■ Typically, an enhancement of injury claim involves vehicle collisions. *See Miller*, 551 N.E.2d at 1141 (passenger injured in a motorcycle collision); *Marshall*, 680 N.E.2d at 1106 (worker injured while backing up a forklift); *Jackson*, 535 N.E.2d at 1212 (driver and passenger of low-entry design garbage truck sued driver of truck involved in head-on collision). The doctrine however is merely a variation of the strict liability theory, extending a manufacturer's liability to situations in which the defect did not cause the accident or initial impact, but rather increased the severity of the injury. *Jackson*, 535 N.E.2d at 1213. In effect, the doctrine of enhanced injury merely expands the proximate cause requirement to include enhanced injuries. *Marshall*, 680 N.E.2d at 1108. Proximate cause is established when the injury caused by the product is a natural and probable consequence which was, or should have been, reasonably foreseen or anticipated in light of the attendant circumstances. *Id.* An intervening cause, such as a misuse of the product, will relieve the manufacturer of liability when the manufacturer could not have reasonably foreseen the intervening acts. *Id.*

In this case, there were no warnings on the jack or in the instruction manual informing a user that if the jack reaches its full extension and an additional 70 foot pounds of torque are applied, the jack nut will shear off and render the jack inoperable. Yvonne contends that had the jack nut not sheared Mark may have survived. However, this is uncertain under the evidence presented. Furthermore, as discussed above, Mark misused the jack as a matter of law and no reasonable trier of fact could find him less than fifty percent at fault. The enhancement of injury doctrine merely expands the proximate cause requirement to include enhanced injuries. *Id.* Because we have determined that Mark misused the jack as a matter of law and is more than fifty percent at fault, Yvonne cannot establish that the jack proximately caused (enhanced) his injuries. Thus, Yvonne's enhancement argument fails.

### III. Adequacy of the Warnings

Yvonne also contends that the warnings were inadequate and designates the testimony of Dr. Mortimer, an expert in human factors, as evidence. Even if Dr. Mortimer's testimony is admissible as expert testimony, we believe under these facts no

reasonable trier of fact could find Mark less than fifty percent at fault in light of his particular misuse of the jack.

### Conclusion

For the above reasons, we believe General Motors and Seeburn are entitled to judgment as a matter of law on the issue of misuse. Although we have determined that misuse is not a complete defense and should be allocated accordingly under the comparative fault scheme, under these specific facts no reasonable trier of fact could find that Mark was less than fifty percent at fault for his injuries. Because there are no genuine issues of material fact and General Motors and Seeburn are entitled to judgment as a matter of law, we affirm the trial court's decision granting summary judgment.

Affirmed.

KIRSCH, J., and BARNES, J., concur.