**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**SWARAY E. CONTEH**
The Law Office of Swaray E. Conteth
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**ROBERT G. ZEIGLER**
**T. GRAHAM DYCUS**
Zeigler Cohen & Koch
Indianapolis, Indiana



FILED
Oct 04 2012, 9:25 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JUSTINE MILLER, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.  49A02-1201-CT-117 |
| | ) | |
| ANONYMOUS HEALTHCARE | ) | |
| ORGANIZATION, DOE 1, DOE 2, DOE 3, | ) | |
| DOE 4, and DOE 5, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable John F. Hanley, Judge
The Honorable Christopher Haile, Magistrate
Cause No. 49D11-1101-CT-414

**October 4, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

Case Summary and Issue

Justine Miller appeals the trial court's grant of summary judgment in favor of Anonymous Healthcare Organization ("Healthcare").  On appeal, Miller raises two issues, which we consolidate and restate as whether the trial court erred when it determined that no genuine issues of material fact exist with respect to Miller's claims.  Concluding the trial court did not err, we affirm.

Facts and Procedural History

In September 2010, Miller accompanied her four-month-old daughter, K.M., to Healthcare's emergency department after Miller noticed that K.M. was having difficulty breathing.  The emergency physician record noted a clinical impression of dehydration, bronchiolitis, and possible child endangerment and malnutrition.  K.M. was given intravenous ("IV") fluids, and labs were drawn.  At some point, Miller became unsatisfied with the care that K.M. was receiving, and decided that she wanted to remove K.M. from the hospital.  The hospital records indicate that Miller was told by the doctor that he recommended admitting K.M. based on her physical condition and did not advise that K.M. leave the hospital.

A longer note in the medical record demonstrates that following the exchange with the doctor, a nurse went in to talk to Miller about Miller leaving with K.M. against medical advice.  Miller was troubled that K.M. was only receiving IV fluids when breathing problems were the reason that K.M. was brought in.  The nurse explained that K.M. had received a

2

breathing treatment and that the oxygen levels in her blood were normal, but that blood work and analysis of her urine showed that K.M. was dehydrated and needed to be kept for further testing and observation, as well as to continue receiving IV fluids. Miller apparently became irate and yelled that she wanted to take K.M. home so that she could be taken to her pediatrician in the morning, and was angry that the doctor had not explained the lab work. The nurse offered to have the doctor come back in to explain the labs, but Miller refused. The nurse then explained that if she stayed in the hospital K.M. would be admitted to the pediatrics department, where she would be followed by a different doctor and that doctor could also explain the lab work to Miller.

At that point Miller said that she wanted to call for a ride home so that she could take K.M. to Riley Children's Hospital. The nurse offered to make arrangements for the hospital to transfer K.M. to Riley, but Miller refused. The nurse further explained that K.M. would need to be transported by the hospital rather than by Miller herself, so that K.M. could continue to receive IV fluids and could be monitored, and, if necessary, treated en route to Riley. Miller again refused. At that point, the nurse explained to Miller that if Miller decided to remove K.M. from the hospital against medical advice, the nurse would have to call Child Protective Services ("CPS") because K.M. was too sick to go home. Miller was further upset by this, and the record shows that shortly after this conversation, CPS was called. Miller filed suit against Healthcare, alleging multiple counts including slander and infliction of emotional distress. Healthcare moved for summary judgment, which the trial court granted. Additional facts will be supplied as necessary.

3

## Discussion and Decision

### I. Standard of Review

Under Indiana's summary judgment standard, the party seeking summary judgment must demonstrate the absence of any genuine issue of material fact, and only then is the non-movant required to come forward with countervailing evidence. Jarboe v. Landmark Cmty. Newspapers of Ind., Inc., 644 N.E.2d 118, 123 (Ind. 1994). This is in contrast to the federal rule, which requires only that the moving party inform the court of the basis of the motion and identify portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to provide sufficient evidence to establish the existence of each challenged element upon which the non-movant has the burden of proof. Id. Indiana does not adhere to Celotex and the federal methodology. Id.

In determining the propriety of summary judgment, we apply the same standard as the trial court. Barnard v. Saturn Corp., a Div. of Gen. Motors Corp., 790 N.E.2d 1023, 1027 (Ind. Ct. App. 2003), trans. denied. Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Id.; see also Ind. Trial Rule 56(C). The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. Id. A trial court's grant of summary judgment is presumed to be valid, and the losing party has the burden of demonstrating that the grant of summary judgment was erroneous. Id. On appeal, we do not reweigh the evidence, but we liberally construe all designated

4

evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial. Id. at 1028.

## II. Summary Judgment Motion

Healthcare contends, and we agree, that Healthcare's call to CPS appears to underlie all of Miller's claims.[1] Indiana law requires individuals who believe that a child is the victim of abuse or neglect to report that abuse or neglect. Ind. Code § 31-33-5-1. The law further provides immunity from civil or criminal liability to anyone who makes a report, unless the report is made maliciously or in bad faith. Ind. Code §§ 31-33-6-1 and -2. The question here then is whether there is any indication that Healthcare reported Miller to CPS either maliciously or in bad faith.

In its motion for summary judgment, Healthcare designated evidence that included its medical records for K.M. Beyond an initial note by the emergency doctor that there might be some concerns about K.M. that would warrant a call to CPS, the records also provide a flowsheet of K.M.'s care. The flowsheet includes a rather lengthy note from a nurse, detailing a conversation she had with Miller leading up to the call to CPS. The note evidences a back-and-forth conversation between Miller and the nurse, with Miller wanting to leave, and the nurse explaining to Miller why that would be dangerous for K.M., and suggesting alternatives that could address Miller's concerns, such as speaking to other doctors or having K.M. transferred to Riley Children's Hospital. The nurse explained to Miller that if Miller decided to remove K.M. against medical advice, the nurse would have to

---

[1] We also agree that, despite pending review before a medical review panel, the trial court had jurisdiction to rule on a motion for summary judgment, as an issue of law, under Indiana Code section 34-

5

call CPS. The note expressly mentions that the nurse explained to Miller that she was not trying to intimidate Miller, but rather wanted to be up-front and to let Miller know that the situation was serious enough to warrant a call to CPS if Miller decided to remove K.M. Unable to satisfy Miller, the nurse then called CPS.

In her response to Healthcare's motion for summary judgment, Miller does not rebut Healthcare's evidence or designate any evidence of her own that would lead one to question Healthcare's report to CPS.[2] In reviewing the designated evidence, there is an absence of any genuine issue of material fact; specifically, we are not left to question whether Healthcare reported Miller to CPS for improper reasons. It appears that Healthcare did not call CPS until Miller turned down all of the alternatives that were provided to her, and Healthcare felt that K.M. would be endangered if Miller removed her from the hospital against medical advice.

## Conclusion

The designated evidence provided by Healthcare demonstrates an absence of any genuine issue of material fact, and Miller did not designate any evidence that counters that determination or leads to an inference of bad faith or maliciousness on the part of Healthcare. Concluding that the trial court did not err in granting summary judgment to Healthcare, we affirm.

---

18-11-1.

[2] Miller's original complaint, which was also designated as evidence by Healthcare, implies that Miller was not offered to have K.M. transferred to Riley until after CPS had already been called. However, we find this to be immaterial because even if that were so, there is still no evidence indicating that Healthcare called CPS maliciously or in bad faith.

6

Affirmed.

BAKER, J., and BRADFORD, J., concur.