FILED

Dec 29 2017, 11:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

J. Curtis Greene
Mark J. Crandley
Meredith Thornburgh White
J.T. Larson
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Theodore L. Stacy
Valparaiso, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Campbell Hausfeld/Scott Fetzer
Company,

*Appellant-Defendant,*

v.

Paul Johnson,

*Appellee-Plaintiff*

December 29, 2017

Court of Appeals Case No.
64A03-1705-CT-984

Appeal from the Porter Superior
Court

The Honorable Mary R. Harper,
Judge

Trial Court Cause No.
64D05-1407-CT-5893

**Altice, Judge.**

## Case Summary

[1]   Paul Johnson lost his eye and suffered other facial injuries after using a tool

designed and sold by Campbell Hausfeld/Scott Fetzer Company (Campbell

Hausfeld).  In response to the products liability suit filed by Johnson, Campbell

Hausfeld alleged the defenses of misuse, alteration, and incurred risk and filed a motion for summary judgment primarily based on these defenses. The trial court determined that Campbell Hausfeld had established misuse as a matter of law due to Johnson's failure to wear safety glasses. Accordingly, the trial court granted summary judgment in favor of Campbell Hausfeld on Johnson's defective design claim. The trial court, however, denied summary judgment with regard to the failure to warn claim. On appeal, Campbell Hausfeld argues that it is entitled to summary judgment on both claims, while Johnson contends that neither claim warrants summary judgment.

We affirm in part, reverse in part, and remand.

## Facts & Procedural History

Campbell Hausfeld sells various power tools to consumers through retailers throughout the United States. Around 2000, Campbell Hausfeld undertook a project to work with outside manufacturers to design and produce a line of pneumatic tools targeted to the consumer do-it-yourself market. As part of this project, Campbell Hausfeld designed a mini air die grinder called the TL1120 (the Grinder), which it sold in stores through 2011. The Grinder is an eight-inch, handheld, air-powered tool intended for grinding, polishing, deburring, and smoothing surfaces in close spaces. It is packaged with wrenches to be used to loosen the metal receiver at the end of the tool to add and remove different attachments, which are not included with the Grinder. The Grinder

does not include a safety guard. If permanently affixed, a guard would prevent users from grinding in tight areas and would obscure users' view.

[4] The Grinder also came with a set of operating instructions. Included within these instructions are the following two relevant warnings:

**⚠WARNING**
*Safety glasses and ear protection must be worn during operation.*

**⚠WARNING** *Make sure attachment stem is fully inserted into collet opening and collet is securely tightened. Loose attachments could fly off during operation and cause serious injury. Only use attachments rated for a minimum of 25,000 RPM.*

*Appellant's Appendix Vol. III* at 201-202. The instructions indicate that a warning symbol "alerts you to a hazard that COULD result in death or serious injury". *Id*. at 201. Additionally, the surfaces of the Grinder direct users to read the manual, wear safety glasses, and use accessories rated at or above 25,000 RPM.

[5] Although the Grinder was expressly intended for grinding, polishing, deburring, and smoothing, the instructions reference using a cut-off disc with the Grinder. Specifically, in plain text and without a warning or other symbol, Instruction 15 states: "Do not use a cut-off disc mandrel on this tool unless a safety guard is in place." *Id*. As stated above, however, no safety guard was provided for use with the Grinder.

[6] Johnson, an experienced tool user, purchased the Grinder for a welding project several months prior to August 2012. After reading the operating instructions,

he attached a wire wheel accessory that he already owned to the Grinder and used it to clean film off the weld. Johnson did not use the Grinder again until the night of August 20, 2012.

[7] That night, Andrew Reed came over to Johnson's pole barn to visit. Johnson indicated that he wanted to work on replacing the headlights on Reed's truck, a project the two had been contemplating for some time. The project required the cutting of fiberglass and a metal headlight bezel. Because he would be working in a tight space, Johnson decided to use the Grinder with a cut-off disc, which he connected using a mandrel, instead of his angle grinder.[1] Though aware that the Grinder did not have a guard, Johnson claims that he did not realize that there was a risk of personal injury if he used a cut-off disc on the Grinder without a guard. The cut-off disc likely had a maximum RPM rating of 19,000. Reed expressed concern that the RPM rating for the disk was too low, but Johnson promptly put him at ease.

[8] Johnson wore prescription glasses as he cut around the headlights with the Grinder. He thought the glasses, which contained safety glass, were sufficient to constitute safety glasses. Johnson quickly completed the cuts around the first headlight and moved to the second. He took a break while cutting the second opening in order to allow his air compressor to regain pressure. When he began

---

[1] On all previous occasions in which he used a cut-off disc, Johnson attached the disc to an angle grinder that had an affixed guard. He felt the angle grinder was "too big and bulky to hold and make the cuts" for this project. *Appendix Vol. II* at 153.

the final cut, the disc disintegrated and a piece struck him in the left side of his face, breaking his eyeglasses and causing serious injury to his cheek and eye. Johnson ultimately lost his left eye.

[9] In 2014, Johnson timely filed suit against Campbell Hausfeld for damages he sustained as the result of using the Grinder. Johnson asserted failure to warn and defective design claims under the Indiana Products Liability Act (IPLA). On September 29, 2016, Campbell Hausfeld filed a motion for summary judgment in which it argued, among other things, that the evidence established each of the three defenses provided by the IPLA (misuse, alteration, and incurred risk) and that no reasonable jury could find Johnson less than 51% at fault for his injuries. Both parties designated evidence and filed briefs with the trial court.[2]

[10] Along with other evidence, Johnson designated the affidavit of Lloyd Sonenthal, a professional forensic engineer and products liability attorney.[3] In

___

[2] Campbell Hausfeld notes that Johnson has provided us with evidence that was not designated below. For example, he includes in his appendix a nearly 200-page deposition, the bulk of which was not specifically designated by either party. This is improper. Accordingly, we will limit our review to the designated evidence. *See Baker v. Heye-Am.*, 799 N.E.2d 1135, 1139 (Ind. Ct. App. 2003) ("This court may not search the entire record but may only consider the evidence that has been specifically designated."), *trans. denied*. The manner in which Johnson designated evidence certainly leaves much to be desired, but we reject Campbell Hausfeld's additional blanket challenge to Johnson's designated evidence, which is improperly raised for the first time in its appellate reply brief.

[3] Campbell Hausfeld argues that Sonenthal is not qualified to give an expert opinion in this case because he "is not a die grinder or power tool expert or an expert on warnings or product safety design". *Appellant's Brief* at 38. Thus, Campbell Hausfeld contends that the affidavit should not be considered on summary judgment. The difficulty with this argument is that Campbell Hausfeld did not file a motion to strike the affidavit below. Therefore, the trial court did not have an opportunity to exercise its gatekeeping function under Ind. Evidence Rule 702. Moreover, Sonenthal is a professional forensic engineer who examined most if not all of the available evidence, including the Grinder, and offered his opinions regarding design defect and failure to

his lengthy affidavit, Sonenthal opines that faulty instructions, inadequate warnings, and lack of a safety guard (or specific information regarding a proper guard) rendered the Grinder unreasonably dangerous when it left the manufacturer. Sonenthal addresses the danger inherent in using a cut-off disc with a die grinder and observes that ISO 11148-9:2001(E)[4] paragraph 6.2.2.9, titled "Accessory hazards" provides in relevant part: "Never mount a grinding wheel, cut-off wheel or router cutter on a die grinder. A grinding wheel that bursts can cause very serious injury or death." *Appellant's Appendix Vol. III* at 196. Sonenthal also notes that ISO 11148-9:2001 paragraph 4.2.6 states in part: "die grinders intended for use with accessories larger than 50 mm in diameter shall have a wheel guard." *Id.* Campbell Hausfeld did not provide users of the Grinder with a guard, even though Instruction 15 suggested that a cut-off wheel could be used with the Grinder and the instructions did not limit the size of accessories. Further, Sonenthal observes that Campbell Hausfeld did not warn users of the dangers associated with using a cut-off wheel on the Grinder. Sonenthal opined that these defects were proximate causes of Johnson's injuries and that Johnson's use of a disc with an RPM rating of 19,000 was not a

warn. "Engineering is a recognized field of study." *Fueger v. Case Corp.*, 886 N.E.2d 102, 107 (Ind. Ct. App. 2008), *trans. denied*. The arguments asserted by Campbell Hausfeld appear more suited to cross-examination at trial regarding the appropriate weight that should be given his expert testimony. *See id.* ("any gaps in his knowledge of skid loaders could be exploited at trial through vigorous cross-examination and should not have been weighed by the trial court in a motion to strike and motion for summary judgment").

[4] ISO 11148-9:2001(E) provides international safety standards applicable to die grinders.

contributing factor because the disc was rotating below its designed speed by a wide margin.

[11] Following a hearing, the trial court entered an order on March 10, 2017, concluding that Johnson misused the Grinder as a matter law by failing to wear safety glasses. The court granted summary judgment in favor of Campbell Hausfeld on the defective design claim but denied summary judgment with respect to the failure to warn claim. Campbell Hausfeld moved to certify the order for interlocutory appeal. The trial court granted the motion, and this court subsequently accepted jurisdiction. Additional facts will be provided below as needed.

## Standard of Review

[12] We review the propriety of summary judgment de novo and apply the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Summary judgment is appropriate where the designated evidence establishes that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* On review, we liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial. *Barnard v. Saturn Corp.*, 790 N.E.2d 1023, 1028 (Ind. Ct. App. 2003), *trans. denied*.

## Discussion & Decision

[13] There is no dispute that the IPLA governs this case. *See* Ind. Code § 34-20-1-1. Under the IPLA,

> a person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer … is subject to liability for physical harm caused by that product to the user or consumer…:
>
> > (1) that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition;
> >
> > (2) the seller is engaged in the business of selling the product; and
> >
> > (3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable under this article.

I.C. § 34-20-2-1. "A product may be defective within the meaning of the IPLA because of a manufacturing flaw, a defective design, or a failure to warn of dangers in the product's use." *Baker*, 799 N.E.2d at 1140. In this case, Johnson's claims against Campbell Hausfeld fall within the last two categories of alleged defects and are intermingled. Essentially, Johnson claims that the Grinder was defective in design because it was sold without a safety guard and with no information on how to obtain or use such a guard, which is not readily available for purchase from Campbell Hausfeld. Johnson also claims that the instructions failed to warn regarding the dangers of using the Grinder with a

cut-off wheel without a safety guard. Both of these claims require Johnson to establish at trial that Campbell Hausfeld "failed to exercise reasonable care under the circumstances in designing the product or in providing the warnings or instructions." I.C. § 34-20-2-2.

[14] The IPLA provides three affirmative defenses to a products liability action, which are generally referred to as misuse, incurred risk, and alteration. I.C. §§ 34-20-6-3 through -5. Campbell Hausfeld asserts all three defenses against Johnson's lawsuit and in support of its motion for summary judgment.

[15] Before addressing each defense, we observe that comparative fault principles apply in products liability cases. I.C. § 34-20-8-1(a) ("the fault of the person suffering the physical harm, as well as the fault of all others who caused or contributed to cause the harm, shall be compared by the trier of fact in accordance with IC 34-51-2-7, IC 34-51-2-8, or IC 34-51-2-9"). For purposes of the IPLA, "fault" is defined as:

> an act or omission that is negligent, willful, wanton, reckless, or intentional toward the person or property of others. The term includes the following:
>
> (1) Unreasonable failure to avoid an injury or to mitigate damages.
>
> (2) A finding under IC 34-20-2 [] that a person is subject to liability for physical harm caused by a product, notwithstanding the lack of negligence or willful, wanton, or reckless conduct by the manufacturer or seller.

Ind. Code § 34-6-2-45(a). Notably, this definition does not include "incurred risk" which is expressly included in the definition of fault applicable to general tort claims. I.C. § 34-6-2-45(b).

### Misuse

Pursuant to I.C. § 34-20-6-4, it is a defense to a products liability action that "a cause of the physical harm is a misuse of the product by the claimant…not reasonably expected by the seller at the time the seller sold or otherwise conveyed the product to another party." The defendant bears the burden of proving that the plaintiff misused the product in an unforeseeable manner. *Barnard*, 790 N.E.2d at 1029. "Foreseeable use and misuse are typically questions of fact for a jury to decide." *Id*. at 1028.

Misuse is not a complete defense but instead is considered along with all other fault in the case under the comparative fault scheme. *See id*. at 1029-30; *Weigle v. SPX Corp.*, 729 F.3d 724, 739 (7th Cir. 2013). The determination and allocation of fault is a question for the jury, except where there is no dispute in the evidence and the jury could come to only one conclusion. *See Green v. Ford Motor Co.*, 942 N.E.2d 791, 795 (Ind. 2011); *Barnard*, 790 N.E.2d at 1031.

Campbell Hausfeld asserts that Johnson misused the Grinder in three ways: he did not wear proper safety glasses; he attached and used a cut-off disc without a safety guard in place; and, the cut-off disc had an inadequate RPM rating. Campbell Hausfeld notes that Johnson's actions were in direct contravention of

the operating instructions, which Johnson received and read after purchasing the Grinder.

[19] There is no dispute that Johnson did not wear safety glasses when operating the Grinder or that the operating instructions and the handle of the Grinder warned users to wear safety glasses. However, Johnson, as well as Reed, testified that on the night of his injury, Johnson believed his prescription eyeglasses constituted sufficient safety glasses. Although they did not, we cannot say as a matter of law that Campbell Hausfeld could not reasonably foresee a user confusing other eyewear with safety glasses. Further, even assuming that Johnson's failure to wear eyeglasses constituted misuse, his fault in this regard would need to be weighed by the jury based on principles of comparative fault.

[20] Turning to Johnson's use of the cut-off disc without a guard, we observe that Instruction 15 establishes Campbell Hausfeld foresaw that the Grinder might be used as a cut-off tool in addition to its primary purposes of grinding, polishing, deburring, and smoothing. The instruction states: "Do not use a cut-off disc mandrel on this tool unless a safety guard is in place." *Appellant's Appendix Vol. III* at 201. Despite this foreseeable use, Campbell Hausfeld did not provide a safety guard with the Grinder or explain to users how to obtain a proper safety guard or what in fact constitutes such a guard. Additionally, Campbell Hausfeld did not designate this instruction as a warning or otherwise expressly bring the user's attention to the dangers associated with such use.

[21] Johnson designated evidence regarding the danger of using a cut-off disc with a die grinder. Specifically, Sonenthal's affidavit discusses safety standards applicable to die grinders. Sonenthal references ISO 11148-9:2001(E) paragraph 6.2.2.9, which indicates that a cut-off wheel should never be mounted on a die grinder, and ISO 11148-9:2001 paragraph 4.2.6, which provides that die grinders intended for use with accessories larger than 50 mm in diameter shall have a wheel guard. Campbell Hausfeld did not expressly limit the size of accessories that could be attached to the Grinder and suggested that a cut-off wheel could be used, yet did not provide users with a guard.

[22] Campbell Hausfeld responds that the ISO standards cited by Sonenthal did not become effective until December 1, 2011. There is no designated evidence supporting Campbell Hausfeld's claim in this regard. Moreover, the designated evidence indicates that the Grinder was sold by Campbell Hausfeld through 2011. Thus, even accepting Campbell Hausfeld's unsupported statement regarding the effective date of the ISO standards at issue, the evidence indicates that Johnson could have purchased the Grinder after that date.

[23] Despite the dangers associated with using a cut-off disc on the Grinder, Campbell Hausfeld did not provide users with an express warning. Instruction 15 simply indicated in plain text that a cut-off disc mandrel should not be used without a safety guard. No doubt Johnson ignored this instruction, but the designated evidence does not establish that Campbell Hausfeld provided a

legally sufficient warning in this regard.[5]  Thus, although Johnson's use of the Grinder in disregard of the instruction to use an unprovided safety guard likely constitutes misuse, such misuse must be compared with any fault attributable to Campbell Hausfeld's, such as its failure to warn.

[24]  The final misuse alleged by Campbell Hausfeld is that the cut-off disc had a maximum RPM rating of 19,000 and that instructions for the Grinder, as well as writing on the body of the tool, warned users to use attachments rated for a minimum of 25,000 RPM.  Johnson clearly disregarded this warning.  Sonethal opined, however, that the inadequate rating was not a contributing factor in Johnson's injury because the disc was rotating well below its designed speed.  Sonenthal explained that given the low-capacity air compressor and the set up used by Johnson, it was his belief that Johnson's die grinder was incapable of reaching a rotational speed above 13,000 RPM.  Campbell Hausfeld's engineer Brandon Cross testified, "hypothetically, if the tool's running at 13,000 RPM, then it would be safe to use a 19,000 RPM cut-off disc."  *Appellee's Appendix Vol. II* at 9.  In light of this designated evidence, whether Johnson's use of an

---

[5] A presumption exists that where an adequate warning is provided by the seller, the warning will be heeded by the user.  *See Kovach v. Caligor Midwest*, 913 N.E.2d 193, 199 (Ind. 2009).  The adequacy of a warning, however, is generally a question of fact.  *Weigle*, 729 F.3d at 731.  A seller must provide both adequate instructions for safe use of the product *and* a warning as to dangers inherent in improper use.  *Id*.  Potential harmful consequences must be made apparent to the user, with warnings of such intensity as to cause a reasonable person to exercise for his or her own safety caution commensurate with the potential danger.  *Id*. (citing *Jerrell v. Monsanto Co.*, 528 N.E.2d 1158, 1162-63 (Ind. Ct. App. 1988), *trans. denied*).  On appeal, Campbell Hausfeld seems to argue that an instruction (i.e., Instruction 15) is the same as a warning but its own safety legend provided in the operating instructions indicates otherwise.

inadequately rated disc was a "cause of [his] physical harm" remains a material issue of fact for the jury to decide. I.C. § 34-20-6-4.

[25]    In sum, we cannot agree with Campbell Hausfeld that Johnson wearing eyeglasses instead of safety glasses or using an inadequately rated cut-off wheel constituted misuse, as defined by I.C. § 34-20-6-4, as a matter of law. Further, Johnson's use of the Grinder in disregard of Instruction 15 is just one part of the comparative fault analysis. The designated evidence simply does not establish as a matter of law that Johnson was at least 51% at fault and that the jury, when allocating fault, could come to only one conclusion. Accordingly, Campbell Hausfeld is not entitled to summary judgment based on the defense of misuse.

**Alteration**

[26]    Campbell Hausfeld also asserts the defense of alteration in support of its motion for summary judgment. This defense applies where:

> a cause of the physical harm is a modification or alteration of the product made by any person after the product's delivery to the initial user or consumer if the modification or alteration is the proximate cause of the physical harm where the modification or alteration is not reasonably expectable to the seller.

I.C. § 34-20-6-5. "The modification or alteration of the product must be independent of the expected and intended use to which the product is put." *Smock Materials Handling Co., Inc. v. Kerr*, 719 N.E.2d 396, 404 (Ind. Ct. App. 1999).

The Grinder is designed to be used with attachments that are purchased independently by the user. Moreover, the operating instructions imply that a "cut-off disc mandrel" may be attached to the Grinder, which effectively modifies the tool from a die grinder to a cut-off tool. Thus, Campbell Hausfeld cannot seriously contend that it could not have reasonably expected that a user would attach a cut-off disc using a mandrel. Campbell Hausfeld is not entitled to summary judgement based on this defense.

## Incurred Risk

Campbell Hausfeld also asserts the defense of incurred risk in support of its motion for summary judgment. Unlike misuse, in the context of products liability cases, this defense is a complete defense and not subject to comparative fault. *See* I.C. § 34-6-2-45. The defense applies where "the user or consumer bringing the action: (1) knew of the defect; (2) was aware of the danger in the product; and (3) nevertheless proceeded to make use of the product and was injured." I.C. § 34-20-6-3. A defendant is entitled to summary judgment on the basis of incurred risk only if "the evidence [is] without conflict and the sole inference to be drawn is that the plaintiff had actual knowledge of the specific risk and understood and appreciated that risk." *Cole v. Lantis Corp.*, 714 N.E.2d 194, 200 (Ind. Ct. App. 1999).

The doctrine of incurred risk focuses on a plaintiff's venturousness and requires a subjective determination. *Pfenning v. Lineman*, 947 N.E.2d 392, 403 (Ind. 2011). It "teaches that a person who proceeds in the face of what he knows to

be a risk of a certain consequence cannot complain if the consequence materializes." *Traylor v. Husqvarna Motor*, 988 F.2d 729, 732 (7th Cir. 1993). "To incur risk, the injured party must have been more than generally aware of the potential for injury, but must have had actual knowledge of the specific risk." *Meyers v. Furrow Bldg. Materials*, 659 N.E.2d 1147, 1149-50 (Ind. Ct. App. 1996), *trans. denied*.

[30]  Campbell Hausfeld directs us to two cases in which we affirmed summary judgment based on incurred risk. In each of these cases, however, the manufacturer provided users with express warnings. *See Coffman v. PSI Energy, Inc.*, 815 N.E.2d 522, 529 (Ind. Ct. App. 2004) (plaintiff's testimony showed he was "fully aware of the risks of injury associated with his conduct" and "disregarded all warnings that were provided", including an obvious "label warning of the dangers posed by overhead power lines"), *trans. denied*; *Meyers*, 659 N.E.2d at 1149-50 (because plaintiff had extensive knowledge of and experience using concrete and had read the multiple warnings on the bags, he was aware of the specific risk of burns from wet concrete).

[31]  In this case, the designated evidence does not establish that Campbell Hausfeld provided a legally sufficient warning regarding the dangers of using the Grinder without a guard. Users were not warned that using the Grinder in this manner could result in serious injury or death. Further, although Johnson had experience with tools in general, including ones with attached guards, he testified that prior to his injury, he was not aware of any risk of injury if he used the cut-off disc on the Grinder without a guard. He testified that he would not

remove a safety guard that came affixed to a tool, such as on his angle grinder, but the Grinder did not have such a guard. A jury could certainly determine that Johnson, an experienced tool user, was aware of and accepted the specific risk involved in using the Grinder without a guard, but this is not the sole inference that can be drawn from the evidence. Thus, Campbell Hausfeld is not entitled to summary judgment based on the defense of incurred risk.

## Defective Design Claim

[32] In passing, Campbell Hausfeld argues that even if not precluded based on the statutory defenses, Johnson's claim of defective design fails as a matter of law. Campbell Hausfeld does not specifically set out the elements of such a claim. Rather, it attacks Sonenthal's affidavit, arguing that Sonenthal "displays his lack of industry awareness by asserting another brand's two-in-one die grinder/cut-off tool is an alternative design." *Appellant's Reply Brief* at 20. Campbell Hausfeld then notes that the Sonenthal affidavit "does not engage in any cost-benefit analysis". *Id*. These slender arguments do not establish Campbell Hausfeld's entitlement to summary judgment. We remind Campbell Hausfeld that in Indiana it is not sufficient for a party moving for summary judgment to point out alleged failings in the nonmovant's evidence. Rather, it is the movant's burden to designate evidence and affirmatively demonstrate the absence of a genuine issue of fact as to a determinative issue. *See Jarboe v. Landmark Cmty. Newspaper of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994).

## Conclusion

[33]    Campbell Hausfeld is not entitled to summary judgment based on any of its asserted statutory defenses. Moreover, the designated evidence establishes a genuine issue of material fact regarding whether Campbell Hausfeld provided adequate warning concerning the use of the Grinder with a cut-off disc, especially where the operating instructions imply that the Grinder may be used as a cut-off tool. Finally, we conclude that Campbell Hausfeld has failed to establish its entitlement to summary judgment on the defective design claim. The trial court, therefore, improperly granted summary judgment on the defective design claim.

[34]    Judgment affirmed in part, reversed in part, and remanded.

Baker, J. and Bailey, J., concur.